In re Ingrid C. SODERLUND, Debtor.

Jay S. ZIMMERMAN, Plaintiff,

v.

Ingrid C. SODERLUND, Defendant.

Bankruptcy No. 94–17021–WCH.
Adv. No. 95–1231.

United States Bankruptcy Court,
D. Massachusetts.

July 10, 1996.

Sabin Willett, Wendy A. Miklus, Bingham, Dana & Gould, Boston, MA, for Jay S. Zimmerman.

Lawrence Rudderham, Mooney Law Offices, Brookline, MA, for Ingrid S. Soderlund.

## PRELIMINARY DECISION

WILLIAM C. HILLMAN, Bankruptcy Judge.

The plaintiff, Jay S. Zimmerman, brought this adversary proceeding in his capacity as a general partner of Bingham, Dana & Gould ("Plaintiff" or "BD & G" hereafter). It seeks a determination that BD & G's claim against Ingrid C. Soderlund ("Debtor") is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)[1] and 523(a)(15).

1. While the complaint refers only to § 523(a)(2)(A) I granted an oral motion to amend

I requested that the parties file memoranda of law expressing their views with regard to several questions of law. I proposed to determine those legal questions before proceeding to a trial.

### Agreed Facts

In approximately August of 1992, Debtor contacted a BD & G partner regarding representation of her interests in a divorce and child custody proceeding which had been commenced by her husband, Yamil H. Kouri, Jr. ("Kouri"). Debtor and BD & G entered into an agreement for representation on September 9, 1992, whereby Debtor agreed to be obligated for all fees and costs with a monthly service charge of 1.5% on unpaid bills, plus all expenses and costs of collection, including attorneys' fees. She paid a $10,000 retainer.

BD & G billed the Debtor monthly. Prior to January, 1994, the total billed in the highly contentious matter was $163,612.16, against which Debtor and certain family members paid $46,712.35. As the case moved toward trial in April, 1994, BD & G requested that Debtor execute a promissory note for the then outstanding fee balance of $120,000. Debtor executed the note on the date of trial.

The note provided for regular monthly payments with an escalation according to increases in Debtor's future income. It also stated that it "is governed by a certain Agreement for Wage Attachment" which was incorporated by reference. In response to my request, BD & G has informed me that the referenced agreement was never executed.

In the course of settlement of the marital dispute, BD & G received a $25,000 fee award from Kouri, which Kouri paid. BD & G's fees continued to accrue. Debtor made three payments on the note, aggregating $3,666.73. The balance due to BD & G as of March 24, 1995, was about $167,000.00, plus costs of collection, etc., as may be allowable.

Debtor filed her voluntary Chapter 7 petition on November 1, 1994, just under seven months after the delivery of the note.

to have all references encompass a claim under § 523(a)(2)(B) also.

## Facts Not Agreed

BD & G asserts the following additional facts which Debtor disputes:

1. In February, 1994 BD & G attorneys discussed with Debtor the possibility that, absent further assurances of Debtor's ability to pay, BD & G would be forced to withdraw from its representation of Debtor.

2. Debtor made implied representations to BD & G of her ability and intention to perform the terms of the note, including a representation that she had sufficient income to make the required installment payments, and that if she were in fact unable to meet those payments she could and would seek more lucrative employments or work additional hours. The escalating payment provision was included based upon Debtor's express representation that her income could and would increase after the divorce litigation terminated.

3. Debtor expressly represented to BD & G attorneys that she would and could repay all that she presently owed or would owe to it in the future.

4. At the time she made the representations Debtor knew, or should have known that she could and would not pay the note as agreed.

5. BD & G continued its representation of Debtor in justifiable reliance on Debtor's representations.

## Legal Issues Reserved

I asked that the parties address five legal issues prior to trial:

1. Whether the facts alleged by the Plaintiff are representations constituting fraud and hence actionable under § 523(a)(2)(A) or respecting the debtor's financial condition actionable under § 523(a)(2)(B).

2. Whether Debtor's representation of her future actions is actionable under § 523(a)(2)(A).

3. Whether execution of a promissory note, without more, is sufficient as a written statement under § 523(a)(2)(B).

4. Whether BD & G is entitled to bring an action under § 523(a)(15).

5. Whether Debtor's indebtedness to the Plaintiff constitutes a "consumer debt" within the meaning of § 523(d).

## 2(A) or Not 2(A), That is the Question

▮ The allegations which BD & G seeks to prove are implied representations by the Debtor, known to be false when made, that she would make the installment payments required under the note and, if necessary, would obtain additional employment or compensation to fulfill that commitment. Those are the sole issues set forth in the pre-trial agreement. For purposes of this discussion I will assume that those allegations can be demonstrated to be true.

I must first determine whether these facts fall within the provisions of 11 U.S.C. § 523(a)(2)(A) or § 523(a)(2)(B).[2] The former deals with advantages obtained through false pretenses, false representations or fraud "other than a statement respecting the debtor's ... financial condition." The latter deals only with such statements, and requires such statements to be in writing.

▮ This statutory dichotomy is absolute. The challenged action either is or is not a statement regarding financial condition; it cannot be both. *Bal–Ross Grocers, Inc. v. Sansoucy (In re Sansoucy)*, 136 B.R. 20, 23 (Bankr.D.N.H.1992). As a result, an egregiously fraudulent utterance which respects the debtor's financial condition is not a

2. "§ 523. **Exceptions to discharge**
(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive...."

ground for nondischargeability of a debt because it is not in writing.

■ The only flexibility available to the judge is in defining the operative term.

A number of cases define the phrase narrowly, so that the bulk of factual assertions fall under (A) rather than (B). For example, Judge Yacos held that

> "Both § 523(a)(2)(A) and (B) remain in full force if the phrase 'financial condition' is given its normal commercial meaning, i.e., an equation of assets and liabilities and not a statement about the condition or quality of a single asset or liability. Stated otherwise, the Court finds that a 'statement of a debtor's or insiders financial condition' as used in § 523(a)(2)(B) means a balance sheet and/or profit and loss statement or other accounting of an entity's overall financial health and not a mere statement as to a single asset or liability."

*Sansoucy, supra.*

The two decisions from this District differ. Supporting *Sansoucy* is Judge Queenan's decision in *Benjelloun v. Robbins (In re Robbins)*, 178 B.R. 299, 304 (Bankr.D.Mass.1995). To the contrary is Judge Goodman's holding that the phrase must be broadly interpreted and that the misstatement of the amount of an indebtedness to a single creditor is a statement respecting the speaker's financial condition. *Connecticut National Bank v. Panaia (In re Panaia)*, 61 B.R. 959, 960 (Bankr.D.Mass.1986).

Other cases adopting the *Sansoucy/Robbins* position include *City Federal Savings Bank v. Seaborne (In re Seaborne)*, 106 B.R. 711, 713 (Bankr.M.D.Fla.1989) and *In re Pollina*, 31 B.R. 975 (D.N.J.1983). It has been held that "nothing in the legislative history indicates that § 523(a)(2)(B) should be expanded beyond statements about a debtor's net worth or overall earning capacity." *Jokay Company v. Mercado (In re Mercado)*, 144 B.R. 879, 883 (Bankr.C.D.Cal.1992).

The opposite position, consistent with *Panaia*, is illustrated by *Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060 (4th Cir.1984):

> "Concededly, a statement that one's assets are not encumbered is not a formal financial statement in the ordinary usage of that phrase. But Congress did not speak in terms of financial statements. Instead it referred to a much broader class of statements—those 'respecting the debtor's ... financial condition.' A debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition.... Consequently, the statement must be in writing to bar the debtor's discharge."

*Engler* follows an earlier Fourth Circuit decision holding that statements that the business was growing and that the speaker was very successful were not actionable unless in writing. *Blackwell v. Dabney (In re Blackwell)*, 702 F.2d 490, 492 (4th Cir.1983).

Chief Judge Kaplan read in the statute that "Congress has provided that if fraud, false pretense or misrepresentation is to be based upon oral representation of ability to repay, then no action under 11 U.S.C. § 523(a)(2) may be sustained." *Chemical Bank v. Sigrist (In re Sigrist)*, 163 B.R. 940, 947 (Bankr.W.D.N.Y.1994).

Other cases supporting the position that something less than a full statement of assets and liabilities may constitute a statement respecting a debtor's financial condition include *Hudson Valley Water Resources, Inc. v. Boice (In re Boice)*, 149 B.R. 40, 46 (Bankr.S.D.N.Y.1992) (ownership of particular property); *White v. Grisham (In re Grisham)*, 177 B.R. 306 (Bankr.W.D.Mo.1995) (automobile financial responsibility form); *Butler v. Roberts (In re Roberts)*, 54 B.R. 765 (Bankr.D.N.D.1985) (statement regarding home equity position); *Volk of Philadelphia, Inc. v. Gelfand (In re Gelfand)*, 47 B.R. 876, 878 (Bankr.E.D.Pa.1985) (statement of solvency); *United Virginia Bank v. Cook (In re Cook)*, 46 B.R. 545, 549 (Bankr.E.D.Va.1985) (equipment list). *See also McNulty v. Sullaway (In re Sullaway)*, 66 B.R. 320 (Bankr.D.Mass.1986) (dicta).

The only legislative history cited by courts appears to be remarks by Representative Edwards and Senator DeConcini in the Congressional Record. *See, e.g., Mercado* at 879. I do not find that language helpful or persuasive in reaching a decision.

If I were to hold that a statement which reflected any aspect of a debtor's financial condition is the basis for a nondischargeability action only if in writing, egregious frauds could be perpetrated upon naive lenders. These would most likely be amateur lenders—friends, family, and the like—rather than banks and other institutional lenders, which generally require financial information upon which they intend to rely to be in writing.

On the other hand, restricting the requirement for a writing to statements reflecting "an entity's overall financial health", *Sansoucy, supra,* narrows the scope of the provision to only the most deliberate false statements.

Either interpretation could bring forth a parade of imaginary horribles, but, on balance, I believe that less harm is done by adopting the more restrictive meaning of the phrase and thus join with Judges Yacos and Queenan. The statements made by the Debtor are not statements respecting her financial condition as that term is used in § 523(a)(2)(B). The applicable statutory provision is § 523(a)(2)(A).[3]

### The Alleged Misrepresentations

■ The essence of the purported misstatements upon which BD & G relied was Debtor's representation that she had the willingness and future ability to make payments under the note.

■ Representations actionable under § 523(a)(2)(A) must be (1) knowingly fraudulent falsehoods (2) describing past or current facts (3) that were justifiably relied upon by the other party. *See Allison v. Roberts (In re Allison),* 960 F.2d 481, 483 (5th Cir.1992) as to elements (1) and (2); *Field v. Mans,* — U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) as to (3).

As to the second requirement,

"[A] promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise subsequently is breached. A debtor's misrepresentations of his intentions, however, may constitute a false representation within the meaning of the dischargeability provision if, when the representation is made, the debtor has no intention of performing as promised."

*Allison* at 484 (citations omitted); *Kuper v. Spar (In re Spar),* 176 B.R. 321, 326–327 (Bankr.S.D.N.Y.1994); *Bane v. LeRoux (In re Curran),* 157 B.R. 500, 508 (Bankr. D.Mass.1993).

■ BD & G has alleged that Debtor knew that the representations of future repayment were known to be false when made. If it is able to establish that fact, it will have satisfied its burden under the second element. Proof merely of failure to pay will not suffice.

The other elements will be demonstrated, or not, at the evidentiary hearing.

### BD & G's Right to Relief Under § 523(a)(15)

■ Prior to October 22, 1994, the effective date of the Bankruptcy Reform Act of 1994 (the "Reform Act"),[4] the only provision of § 523 dealing with marital matters was § 523(a)(5):

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise . . . ; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the na-

---

**3.** It follows from this that I need not consider whether any writing proposed to be offered into evidence would be adequate.

**4.** Pub.L. 103–394.

ture of alimony, maintenance, or support. . . ."

There was constant litigation involving the determination of whether a particular payment, however denominated, was actually alimony, maintenance, or support. *See In re Altavilla*, 40 B.R. 938 (Bankr.D.Mass.1984) and the multitude of cases citing it in this District.

The Reform Act added a new ground for the nondischargeability of a debt, codified in § 523(a)(15). A debt is not discharged which is

"(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . .; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor."

The issue immediately before me is whether BD & G, which is not a spouse, former spouse, or child of the Debtor, can seek to have the debt to it found nondischargeable under the new clause.

"Although section 523(a)(15) was undoubtedly directed at debts owed to a spouse, former spouse, or child of the debtor, its language does not contain that limitation. Thus, it may be argued that debts to third parties arising as the result of a divorce or separation may in some cases be within its scope. Such debts could, for example, include fees owed to attorneys in courts that have not found such fees to be owed to a spouse or former spouse and nondischargeable under section 523(a)(5). How-

ever, the legislative history clarifies that 'the exception applies only to debts incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation.'"

Henry J. Sommer, Margaret Dee McGarity, Lawrence P. King, *Collier Family Law and the Bankruptcy Code* ¶ 6.07A[2][a] (1996) (footnotes omitted) (*"Family Law"*).

This view—that only parties to the divorce may maintain actions under § 523(a)(15)— was accepted by the court in *Barstow v. Finaly (In re Finaly)*, 190 B.R. 312 (Bankr. S.D.Ohio 1995). I respectfully disagree.

The result called for by the cited legislative history is not mandated by the language of the statute as enacted. The two "unless" clauses are stated in the disjunctive. While (B) can be applied only by applying a cost-benefit analysis to the former spouses and their present obligations to self and others, (A) can be invoked without that inquiry.

The committee report language quoted in *Family Law*,[5] was written at a time when the (A) and (B) clauses were in the conjunctive in the proposed legislation, as is evident from a sentence appearing in the committee report one paragraph above that quoted in the thesis:

"This subsection will make such obligations nondischargeable in cases where the debtor has the ability to pay them *and* the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts."

*Id.* (emphasis added).[6]

█ I find the language of the statute to be plain. As a result, my sole function is to enforce it according to its terms, *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989), except for "those rare cases in which literal application . . . will produce a result demonstrably at odds with the intentions of its drafters, *Id.* at 242, 109

---

5. H.R.Rep. No. 835, 103rd Cong., 2nd Sess. 55 (1994), U.S.Code Cong. & Admin.News 1994, pp. 3340, 3364.

6. *See also Family Law* ¶ 6.07A[1] ("Lastly, the 'and' in the original proposal was changed to an 'or'.")

748

S.Ct. at 1030–31. In the latter case, "the intention of the drafters, rather than the strict language, controls." *Id.*

■ It is only when the literal meaning is at variance with the statute as a whole, including its overall policy and purpose, that the "plain meaning" overcomes the words. *Summit Investment & Development Corp. v. Leroux,* 69 F.3d 608, 610 (1st Cir.1995). Such is not the case here.

I find that BD & G is entitled to go forward with its case under § 523(a)(15).

### Is the Debt a Consumer Debt?

If the indebtedness sought to be held non-dischargeable is a "consumer debt", "debt incurred by an individual primarily for a personal, family, or household purpose", § 101(8), and that debt is discharged, it is possible that the Debtor could recover attorney's fees and costs. § 523(d). On mature second thought I find that a determination of this issue need not be made at this time. It may never be necessary to decide the point, and where it is not necessary to make a decision, it is necessary not to make a decision.

### Conclusion

The forgoing will constitute the law of the case for purposes of trial. To the extent not superseded by the above conclusions of law, the Joint Pre–Trial Statement remains in effect. An evidentiary hearing is scheduled to commence August 21, 1996, at 10:00 A.M.