**In re David Arthur TALLANT, Debtor.**

**David Arthur TALLANT, Appellant,**

v.

**Curtis L. KAUFMAN, Appellee.**

**BAP No. EC–97–1409–RyAR.**

**Bankruptcy No. 93–26492–A–7.**

**Adversary No. 93–2523.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 23, 1998.

Decided Feb. 18, 1998.

Martin B. Brifman, Sacramento, CA, for David A. Tallant.

G. Michael Williams, Ganzer & Williams, Stockton, CA, for Curtis L. Kaufman.

Before: RYAN, AHART,[1] and RUSSELL, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

Former client Curtis L. Kaufman ("Appellee") filed a complaint (the "Complaint") against debtor David A. Tallant ("Appellant"), his former attorney and close friend, to determine the dischargeability of a $250,000 unsecured debt under Bankruptcy Code (the "Code")[2] §§ 523(a)(2)(B) and (a)(4). The bankruptcy court held that the debt was nondischargeable under §§ 523(a)(2)(A) and (a)(2)(B), but denied the § 523(a)(4) claim. Appellant appeals the bankruptcy court's determination of nondischargeability under

§§ 523(a)(2)(A) and (a)(2)(B). We AFFIRM IN PART and REVERSE IN PART.

## I. FACTS

The facts are essentially undisputed. Appellant and Appellee have had a business relationship and close friendship for approximately two decades. In 1977 or 1978, Appellant met Appellee at a local golf course. At the time, Appellee owned a construction company, and Appellant operated a successful law practice specializing in business and personal injury litigation. In 1981, Appellant helped Appellee's construction company obtain a lucrative office construction contract with one of Appellant's clients. Over the years, Appellant represented Appellee's construction company, Appellee himself, and Appellee's brother and father.

In the late 1980's or early 1990's, Appellee suffered financial problems apparently due to a decline in the real estate market. Appellee turned to Appellant for assistance and counseling concerning his financial woes. Appellant counseled Appellee and defended him against a suit by one of Appellee's creditors. Ultimately, Appellant referred Appellee to a bankruptcy attorney.

In March 1991, Appellant learned that Appellee's father had died, leaving Appellee an inheritance. Appellant approached Appellee, who was appointed the executor of his father's estate, and asked to borrow $25,000 from the probate estate. Appellee agreed, and Appellant prepared a promissory note and deed of trust to secure the loan. Appellant failed to pay timely the note and interest. He requested another loan of $15,000 from Appellee, and the note was modified to reflect the additional extension of credit. Ultimately, Appellant paid the note in full with interest. At no time did Appellant inform Appellee that these business transactions created adverse pecuniary interests between them, nor did he advise Appellee of Appellee's right to consult independent counsel as required by California Rule of Professional Conduct, Rule 3–300 ("Rule 3–300").[3]

---

1. Hon. Alan M. Ahart, Bankruptcy Judge for the Central District of California, sitting by designation.

2. The Code is set forth in 11 U.S.C. §§ 101–1330 (1994).

3. Rule 3–300 states as follows:

In May 1992, Appellee enjoyed a reversal of fortune when a deceased aunt left him a large distribution from a trust estate. Appellee disclosed this to Appellant. Appellee sought advice from Appellant on how to manage these funds, and Appellant recommended various methods to keep Appellee's creditors at bay.

In July 1992, Appellant requested a $250,000 loan from Appellee. He explained that he needed approximately $500,000 to settle a law suit over a pension plan investment related to Appellant's development project and represented to Appellee that he had the ability to repay the loan from a variety of sources.[4]

During these discussions, Appellant requested that his assistant prepare a year-to-date profit and loss statement for his law practice. This document was procured for the purpose of demonstrating to Appellee that, if all other sources of funding failed, Appellant could still repay the loan from his profitable law practice. The document revealed that Appellant expected that his law practice would gross approximately $800,000 for the 1992 tax year. However, it did not reveal that Appellant personally owed approximately $3 million at the time that he requested the loan. Appellee reviewed the document, but did not request any information regarding Appellant's personal liabilities.[5] Appellant again failed to advise Appellee that their pecuniary interests were adverse as a result of the loan transaction and that Appellee had a right to seek independent legal counsel as required under Rule 3–300.[6]

Appellee ultimately agreed to lend Appellant the $250,000, but because he did not have sufficient funds to make the loan, Appellant advised Appellee to borrow the funds using securities from the trust estate as collateral.[7] Appellant made the necessary arrangements with the brokerage firm and drafted a promissory note reflecting the loan agreement. The note provided that all principal and interest was due within six months.

On July 30, 1993, Appellant filed his chapter 7 bankruptcy petition. Prior to that time, Appellant repeatedly assured Appellee that new funding for the development project was imminent and that Appellee would be paid shortly.[8]

Rule 3–300. Avoiding Interests Adverse to a Client

A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied:

(A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and

(B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and

(C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition.

Cal. Rule of Professional Conduct Rule 3–300 (1997).

4. For example, Appellant told Appellee that he expected a new infusion of funds for the development project, and promised to name Appellee as a beneficiary on a $2 million life insurance policy and to provide Appellee with a pre-signed, blank quit claim deed to protect the loan so that Appellee could fill in the lot number of a property that Appellant claimed had equity of approximately $500,000.

5. Additionally, Appellant failed to inform Appellee that the purported equity in the real property depended upon development of the construction project, which, in turn, depended on new investment; however, this new investment was by no means guaranteed. Further, Appellant failed to explain that the other methods of protecting Appellee's loan, the insurance policy and quit claim deed, were of little value.

6. Appellant admitted during trial that he was Appellee's attorney at the time the loan was requested. During this time, for example, Appellant represented Appellee in a personal injury lawsuit that arose from an automobile accident in March 1992, and which was settled for $150,000 in December 1993.

7. Appellant had earlier set up an account with a brokerage firm for Appellee after advising Appellee that this was a good method for Appellee to keep his creditors at bay by making it difficult for them to locate Appellee's assets.

8. Appellee loaned Appellant another $25,000 in January 1993 even though Appellee had not received any interest payments on the $250,000

On November 1, 1993, Appellee filed the Complaint. On July 31, 1996, a trial was conducted, and the bankruptcy court took the matter under submission.

On April 15, 1997, the bankruptcy court filed its published Memorandum of Decision. *See Kaufman v. Tallant (In re Tallant),* 207 B.R. 923 (Bankr.E.D.Cal.1997). The bankruptcy court denied the § 523(a)(4) claim, holding that the attorney-client relationship and the disclosure rules applicable to an attorney-client loan did not create an express trust, which is required to state a claim under § 523(a)(4). *Id.* at 930. However, the bankruptcy court held the debt nondischargeable under §§ 523(a)(2)(A) and (a)(2)(B).

On May 13, 1997, the bankruptcy court entered an order extending time for filing a notice of appeal to May 16, 1997. The notice of appeal was timely filed on May 15, 1997.

## II. ISSUES ON APPEAL

1. Whether the bankruptcy court erred when it determined that Appellant's debt was nondischargeable under § 523(a)(2)(A) because of Appellant's failure to comply with Rule 3–300.

2. Whether the bankruptcy court erred when it concluded that Appellant's presentment to Appellee of a year-to-date profit and loss statement of Appellant's law practice constituted a materially false statement in writing concerning Appellant's financial condition for purposes of § 523(a)(2)(B).

loan. The issue concerning Appellant's liability on this $25,000 loan was not determined by the bankruptcy court because the parties stipulated to have this matter heard at a later date.

9. Although the Complaint only alleged §§ 523(a)(2)(B) and (a)(4) claims, the bankruptcy court found Appellant's debt nondischargeable under §§ 523(a)(2)(A) and (a)(2)(B). The record reflects that the parties appeared to argue at trial the § 523(a)(2)(A) claim, although this subsection was not specifically referenced in the Complaint. We note that Appellant's attorney neither objected to the discussion concerning Appellant's duty to disclose pursuant to Rule 3–300, nor moved for reconsideration of the bankruptcy court's decision concerning the § 523(a)(2)(A) claim, nor

## III. STANDARD OF REVIEW

■ We review the bankruptcy court's conclusions of law *de novo,* and its findings of fact for clear error. *Apte v. Japra (In re Apte),* 96 F.3d 1319, 1322 (9th Cir.1996) (citing *Citibank v. Eashai (In re Eashai),* 87 F.3d 1082, 1086 (9th Cir.1996)). Whether a requisite element of a § 523(a)(2)(A) claim is present is a factual determination reviewed for clear error. *Anastas v. American Sav. Bank (In re Anastas),* 94 F.3d 1280, 1283 (9th Cir.1996) (citing *Runnion v. Pedrazzini (In re Pedrazzini),* 644 F.2d 756, 757 (9th Cir.1981)). Similarly, the issues of reliance, intent to defraud, proximate cause, and materiality are questions of fact for purposes of § 523(a)(2)(B) that are reviewed for clear error. *Candland v. Insurance Co. of North Am. (In re Candland),* 90 F.3d 1466, 1469 (9th Cir.1996) (citations omitted).

## V. DISCUSSION

A. *The Bankruptcy Court Did Not Err When It Concluded That Appellant's Debt Was Nondischargeable Under § 523(a)(2)(A) Because Of Appellant's Failure To Disclose Information Required By Rule 3–300.*[9]

■ The bankruptcy court held that Appellant, before borrowing money from his client, owed a duty to his client under Rule 3–300 "to warn Kaufman that their relationship had dramatically changed, that their interests had become adverse, that unsecured lending posed risks to Kaufman, and that Kaufman could and should seek independent counsel to provide him with the objective legal advice that Tallant could no longer

argues on appeal that the bankruptcy court improperly applied § 523(a)(2)(A) to determine the nondischargeability of the debt because the Complaint did not state a § 523(a)(2)(A) claim. In fact, Appellant's brief addresses the merits of the § 523(a)(2)(A) claim. Thus, because the issue of whether the bankruptcy court erred when it determined the § 523(a)(2)(A) claim which was not referenced in the Complaint is not jurisdictional and was not raised before the bankruptcy court or on appeal, we decline to address it. *See Jodoin v. Samayoa (In re Jodoin),* 209 B.R. 132, 136–37 (9th Cir. BAP 1997) (holding that the appellant's failure to object to argument and evidence related to a cause of action not stated in the complaint constituted an implied acceptance of the bankruptcy court's resolution of the issue).

render." *Tallant,* 207 B.R. at 932. Consequently, Appellant's failure to disclose this information to Appellee, as required by Rule 3–300, amounted to a false representation under § 523(a)(2)(A). *Id.*

Appellant admits the ethical violation, but argues that this violation is not the type of omission or nondisclosure contemplated by Congress in the enactment of § 523. He cites *Loomas v. Evans (In re Evans),* 181 B.R. 508, 512 (Bankr.S.D.Cal.1995), for the proposition that a false representation must encompass a statement relating to an existing and ascertainable fact. Appellant contends that his failure to discharge an ethical responsibility was not a material omission of fact relating to the loan transaction.

Appellant argues that because § 523(a)(4) specifically deals with fiduciary relationships and debts under § 523(a)(4) are nondischargeable only if they arise from an express trust, it would be inappropriate to hold that the ethical violations of an attorney also falls within § 523(a)(2)(A).

1. *The Subsections Of § 523 Are Not Mutually Exclusive.*

■ First we must determine whether the bankruptcy court erred as a matter of law when it held that, although Appellant was not a fiduciary for purposes of § 523(a)(4), his violation of his ethical duties under Rule 3–300 constituted a false representation under § 523(a)(2)(A). It is recognized that the subsections of § 523 are generally not mutually exclusive. *See, e.g., Britton v. Price (In re Britton),* 950 F.2d 602, 603–05 (9th Cir.1991); *Romesh Japra M.D., F.A.C.C., Inc. v. Apte (In re Apte),* 180 B.R. 223, 231 (9th Cir. BAP 1995), *aff'd,* 96 F.3d 1319 (9th Cir.1996).[10] In *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir.1996), the Tenth Circuit expressly recognized that although

**10.** However, the Ninth Circuit has stated that § 523(a)(2)(A) and (a)(2)(B) "are mutually exclusive, the former referring to representations other than those respecting a debtor's financial condition and the latter referring specifically to written statements of financial condition." *See Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh),* 973 F.2d 1454, 1457 (9th Cir.1992).

**11.** Section 523(a)(2)(A) states in pertinent part:

the attorney-client relationship was not a fiduciary relationship for purposes of § 523(a)(4), the former client could still bring a § 523(a)(2)(A) cause of action based on the attorney's failure to comply with his ethical duties under a New Mexico professional conduct statute.

Because §§ 523(a)(2)(A) and (a)(4) are not mutually exclusive, the bankruptcy court here could properly decide that Appellant's failure to disclose to Appellee that their relationship had become adverse as a result of the loan transaction and that his failure to inform Appellee about his right to seek independent legal advice violated § 523(a)(2)(A).

2. *The Bankruptcy Court Properly Applied The Elements Of § 523(a)(2)(A).*

We next determine whether the bankruptcy court erred in finding that the $250,000 debt was nondischargeable under § 523(a)(2)(A).[11] To satisfy the requirements of § 523(a)(2)(A), a creditor must prove by a preponderance of the evidence:

(1) that the debtor made a representation; (2) the debtor knew at the time the representation was false; (3) the debtor made the representation with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representation; and (5) the creditor sustained damage as the proximate result of the representation.

*Apte,* 96 F.3d at 1322 (citing *Eashai,* 87 F.3d at 1086; *Britton,* 950 F.2d at 604). *See also Younie v. Gonya (In re Younie),* 211 B.R. 367, 373 (9th Cir. BAP 1997).

a. *Nondisclosure Of Information That Appellant Had A Duty To Disclose Constituted A False Representation Under § 523(a)(2)(A).*

The Supreme Court recognized in *Field v. Mans,* 516 U.S. 59, 68–70, 116 S.Ct. 437, 443,

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money ... to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

11 U.S.C. § 523(a)(2)(A) (1994).

133 L.Ed.2d 351 (1995), that Congress intended to except from discharge under § 523(a)(2)(A) what would amount to fraud at common law. The Court looked at the common law understanding of "actual fraud" at the time § 523(a)(2)(A) was added to the Code and turned to the Restatement (Second) of Torts for the applicable standard. *Id.* at 60–62, 116 S.Ct. at 439. Similarly, the Ninth Circuit has specifically referred to § 551 of the Restatement (Second) of Torts in considering whether a debtor is liable for fraudulent nondisclosure. *See Eashai,* 87 F.3d at 1089. We do the same.

Section 551 of the Restatement (Second) of Torts states:

> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
>
> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. . . .

Restatement (Second) of Torts, § 551 (1976). Comment "f" of § 551 states that the attorney-client relationship constitutes a relationship of trust and confidence whereby the attorney has an affirmative duty of disclosure. *Id.* § 551, cmt. f. This common law duty of disclosure has been codified by Rule 3–300.

A similar issue has been decided by the 10th Circuit in *Young.* In *Young,* the debtor (an attorney) entered into business transactions with his client, a construction partnership, and paid his client for construction projects at a reduced rate and oftentimes by deferred payments. The parties had an unwritten financial arrangement that lasted for over a decade where they would offset their respective bills for services. The attorney never advised his client to seek advice from another attorney about their transactions, that conflicts of interest existed between them, or that the client should speak to another attorney about these conflicts.

The attorney subsequently executed a promissory note in favor of the client which represented the note amount that the attorney owed the client for construction services. Again, the attorney did not instruct his client to consult independent counsel. Ultimately, the client brought a complaint in state court for the amount of the promissory note and other monies due on the account plus interest and punitive damages. The parties settled and reduced the settlement to judgment.

The attorney then filed for bankruptcy, after which the client filed a complaint to determine that the debt was nondischargeable. The bankruptcy court ruled that the portion of the attorney's debt that was evidenced by a promissory note was nondischargeable. The New Mexico district court affirmed.

The Tenth Circuit held that the attorney's breach of his ethical duty to disclose the terms of a business transaction with his client in writing and potential conflicts of interest under the New Mexico professional responsibility rule constituted a false representation under § 523(a)(2)(A).[12] *Young,* 91 F.3d at 1373–76.

█ We adopt the reasoning in *Young* and hold that an attorney's failure to disclose information that he has a duty to disclose under the professional responsibility rule may constitute a false representation of nondisclosure under § 523(a)(2)(A).

█ Appellant's breach of his ethical duty here is the borrowing of money from his client without advising Appellee of the adverse nature of their relationship by reason of the borrowing and Appellee's right to seek independent legal advice. *See* Restatement (Second) of Torts, § 551(1) (1976). The fiduciary relationship between Appellant and Appellee required that any business transac-

**12.** The New Mexico professional conduct rule is virtually identical to Rule 3–300.

tions between them withstand independent review. By failing to advise Appellee of this right, Appellant misrepresented the legal protections afforded Appellee. *See also Cooke v. Howarter (In re Howarter)*, 114 B.R. 682, 684 n. 2 (9th Cir. BAP 1990) (noting that debtor's silence or concealment of a material fact can create a false impression which constitutes a misrepresentation actionable under § 523(a)(2)(A)).

### b. *Appellant Knew Of The Falsity At The Time He Made The False Representations.*

■ Although not expressly discussed by the bankruptcy court, Appellant admitted during trial that he was aware of Rule 3-300 when he entered into the business transactions with Appellee. He also admitted that he was required to know the contents of Rule 3-300 and agreed that he had a duty to advise Appellee that he may seek the advice of independent counsel concerning their business transactions. We conclude that the bankruptcy court's finding that Appellant's conduct fell within § 523(a)(2)(A) implicitly recognized that Appellant had knowledge of his duty to disclose, and thus, knowledge of the falsity at the time of the loan transaction.

### c. *The Bankruptcy Court's Finding That Appellant Intended To Deceive Appellee When He Failed To Disclose Information That He Had A Duty To Disclose Was Not Clearly Erroneous.*

■ Appellee was required to prove by a preponderance of evidence that Appellant's breach of his duty to disclose was accompanied by an intent to deceive. *Apte*, 96 F.3d at 1322; *Eashai*, 87 F.3d at 1089-90. Intent may be inferred from the totality of circumstances. *Young*, 91 F.3d at 1375 (citing *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 486 (Bankr.S.D.N.Y.1987) (quoting *Eastern Food Serv., Inc. v. Leger (In re Leger)*, 34 B.R. 873, 878 (Bankr.D.Mass.1983))); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 301 (2nd Cir.1996).

■ The bankruptcy court made a number of factual findings in determining that the totality of circumstances surrounding Ap-

pellant's failure to make the disclosures as required under Rule 3-300 indicated that Appellant intended to deceive his client into lending him money on an unsecured basis. The bankruptcy court found that, at the time of the transaction, because Appellant owed approximately $3 million in unsecured debt, "[he] must have realized he would be unable to obtain an unsecured loan on any reasonable terms from someone represented by competent counsel." *Tallant*, 207 B.R. at 932. Additionally, Appellant failed to warn Appellee, his client and longtime friend, that he owed approximately $3 million in liquidated debt and an undetermined amount of contingent and unliquidated debt. The court viewed this as an "additional badge of fraud." *Id.*

Further, Appellant exploited his position of trust "implicit in the attorney-client relationship" which was "methodically cultivated ... over the course of many years." *Id.* He had previously helped Appellee obtain a lucrative construction contract, represented him in a personal injury suit, and borrowed money from Appellee's father's probate estate on a secured basis. The bankruptcy court found that this history of representation "was certain to put [Appellee] off his guard in any future transactions." *Id.*

Subsequently, Appellant used information concerning Appellee's reversal of fortune, gained in confidence, for the purpose of obtaining a $250,000 unsecured loan. The purported security devices such as life insurance, quit claim deed, prospect of new funding, and the image of a lucrative law practice were of little value. The bankruptcy court found that "any competent counsel would have debunked the value of the security [Appellant] offered" and concluded that "when [Appellant] turned to his client for money, he purposefully suppressed the warnings [Appellee] needed to protect his own interests." *Id.*

Although a breach of an attorney's duty to disclose information required under a professional responsibility rule does not automatically result in a determination of nondischargeability, in viewing the totality of circumstances here, the bankruptcy court

did not err in finding that Appellant's non-disclosure was intentional.

### 3. *The Bankruptcy Court Did Not Err In Concluding That Appellee Justifiably Relied On The Nondisclosure And That This Nondisclosure Proximately Caused The $250,000 Loss.*

The Supreme Court, applying common law, recently stated that a creditor must demonstrate justifiable reliance in order to except a debt from discharge under § 523(a)(2)(A). *See Mans*, 516 U.S. at 72–76, 116 S.Ct. at 445–46. This is a subjective standard. *Id.* The Ninth Circuit has stated that a bankruptcy court must consider "the knowledge and relationship of the parties themselves." Although this standard protects

> "the ignorant, gullible, and the dimwitted, for no rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool, if a person does have special knowledge, experience and competence he may not be permitted to rely on representations that an ordinary person would properly accept."

*Kirsh*, 973 F.2d at 1458 (quoting W. PAGE KEETON, PROSSER AND KEETON ON THE LAW OF TORTS, § 108 at 751 (5th ed.1984) (internal quotations omitted)).

Here, the bankruptcy court found that Appellee's reliance is inherent in the attorney-client relationship. However, "[t]o the extent any more showing is require[d] of the plaintiff, Kaufman has done so." *Tallant*, 207 B.R. at 933.

Appellant argues that the Appellee failed to carry his burden of proof on the issue of justifiable reliance. He contends that there is no evidence that if Appellant had advised Appellee to seek independent legal counsel, Appellee would have done so. According to Appellant, Appellee lent the money to Appellant because they were close personal friends and Appellant desperately needed the money. Thus, based on this friendship, Appellee would have lent the money regardless of whether Appellant made the requisite disclosures.

Finally, Appellant argues that Appellee was a mortgage banker and was half-way through an MBA program in real estate. Thus, it was "error to come to the conclusion that Mr. Kaufman was unaware of the risks involved in lending $250,000.00 on an unsecured basis to a personal friend who had professed that he was in financial jeopardy."

After a review of the record, we cannot conclude that the bankruptcy court's factual finding of justifiable reliance was clearly erroneous. The record reflects that Appellee viewed Appellant as a very close friend. However, Appellant was also Appellee's attorney, and Appellee relied on him in a number of financial matters. Further, the testimony at trial and in Appellee's declaration provided the bankruptcy court with a sufficient basis to conclude that, had Appellant disclosed to Appellee that their interests had become adverse and advised Appellee to seek independent legal counsel, Appellee would have followed the advice, and independent counsel would have likely advised against the loan, thereby enabling Appellee to avoid the loss.

Fortunately, such speculation is unnecessary. The Ninth Circuit recognizes that "nondisclosure of a material fact in the face of a duty to disclose has been held to establish the requisite reliance and causation for actual fraud under the Bankruptcy Code." *Apte*, 96 F.3d at 1323 (and cases cited therein). In *Apte*, the debtor, who was in the business of subleasing office space, was a party to a master lease agreement with the lessor. *Apte*, 180 B.R. at 226. The debtor defaulted on its lease payments, and the lessor terminated the master lease and filed an unlawful detainer action. *Id.* The debtor subsequently entered into a sublease agreement with an acquaintance (the "sublessee"). The debtor misrepresented that the sublease had been approved by the lessor, including a provision that would permit the lessee to remain in possession of the property even if the master lease were terminated (the "priority provision"). *Id.* Based on this representation, the sublessee made a number of improvements. Ultimately, the sublessee was evicted by the lessor after ninety-five percent of the planned improvements had

**68**

been made. *Id.* at 226–27. The debtor filed a chapter 7 bankruptcy petition soon after the master lease was terminated and the sublessee filed a complaint to determine that the debt was nondischargeable under §§ 523(a)(2)(A) and (a)(6). The bankruptcy court held that the debt was dischargeable because the lessee failed to prove that he justifiably relied on the misrepresentations. *Id.* at 228–29.

The Bankruptcy Appellate Panel reversed, holding that the bankruptcy court erroneously failed to consider numerous nondisclosures, and thus, reliance was inferred when a party under a duty to disclose withholds a material fact. *Id.* at 229.

The Ninth Circuit affirmed, holding that the bankruptcy court improperly considered the effect of the debtor's "myriad of nondisclosures." *Apte,* 96 F.3d at 1323. For example, the court noted that the debtor failed to disclose that he was $1.3 million in default on the master lease, that the lessor had instituted an unlawful detainer action against him, that the lessor would not accept a sublease containing the priority provision, that the lessor did not approve the sublease, and that the lessor had discovered the sublessee's improvements and ordered the construction to stop. *Id.*

■■■■ The Ninth Circuit also noted that the Supreme Court "has recognized the difficulty of proving the reliance or causation elements in a case of fraudulent nondisclosure" in the context of securities fraud. *Id.* (citing *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972)).[13] *See also Piper v. Chris-Craft Indus., Inc.,* 430 U.S. 1, 50, 97 S.Ct. 926, 953–54, 51 L.Ed.2d 124 (1977) (Blackmun, J., concurring) (citing *Ute* ). This difficulty has also been recog-

nized in the context of bankruptcy law. *See Apte,* 96 F.3d at 1323 (and cases cited therein). "Requiring a plaintiff to show a speculative state of facts, i.e., how he would have acted if omitted material information had been disclosed ... would place an unnecessarily unrealistic evidentiary burden on the ... plaintiff ...." *Basic Inc. v. Levinson,* 485 U.S. 224, 245, 108 S.Ct. 978 990–91, 99 L.Ed.2d 194 (1988) (citing *Ute,* 406 U.S. at 153–54, 92 S.Ct. at 1472) (other citation omitted).

> "Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material.... This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact."

*Apte,* 96 F.3d at 1323 (quoting *Ute,* 406 U.S. at 153–54, 92 S.Ct. at 1472).[14] Thus justifiable reliance is established when a party with a duty to disclose a material fact fails to do so. *Id.*

■■■■ In *Young,* a case involving facts nearly identical to the facts in the instant case, the Tenth Circuit found that reliance was "reasonable" given the attorney's failure to disclose potential conflicts of interest related to the services exchange agreement as required by the New Mexico rules of professional conduct.[15] *Young,* 91 F.3d at 1375. The court stated that "[t]his is one of those fabled incidents where silence speaks louder than words. [The client's] reliance was reasonable based on the fact that the [client] knew that Mr. Young was an attorney—in fact their attorney—and that for this reason, ... they trusted him." *Id.* Similarly, in the instant case, Appellant had a duty to disclose

---

13. We also recognized the applicability of the securities fraud cases to bankruptcy fraud to support the principle that reliance may be inferred when a party with a duty to disclose fails to disclose a material fact. *See Apte,* 180 B.R. at 229–30 (and cases cited therein).

14. Here, Appellant's failure to disclose information that he was required to disclose under Rule 3-300 was material because the rule was enacted for the purpose of preventing an attorney from taking advantage of his client by entering into

adverse commercial transactions. This is precisely what happened here.

15. Although the reliance standard is "justifiable" reliance rather than "reasonable" reliance, if reliance is found to be reasonable, it certainly meets the lower standard of justifiable. *See Apte,* 180 B.R. at 228 (stating that reasonable reliance is a purely objective standard whereas justifiable reliance is a mixture of objective and subjective standards).

the conflict of interest and Appellee's right to seek independent counsel for an unbiased opinion as to the merits of the transaction. Reliance may be inferred from Appellant's failure to disclose the requisite material information.[16]

Consequently, in light of the Ninth Circuit's holding in *Apte* and the Tenth Circuit's holding in *Young*, we conclude that Appellee justifiably relied on Appellant's failure to disclose all material facts to Appellee in connection with the loan transaction, including Appellee's right to independent counsel, which Appellant had a duty to disclose under Rule 3–300.

Accordingly, the bankruptcy court did not err in finding that Appellee had established the elements of nondischargeability under § 523(a)(2)(A) based on Appellant's failure to satisfy the disclosure requirements of Rule 3–300.

B. *The Bankruptcy Court Erroneously Concluded That Appellant's Present-ment To Appellee Of The Profit And Loss Statement Regarding Appellant's Law Practice Was a Material Misrepresentation Under § 523(a)(2)(B).*

A creditor must prove by a preponderance of evidence the following requirements to satisfy § 523(a)(2)(B): [17]

"(1) a representation of fact by the debtor,

(2) that was material,

(3) that the debtor knew at the time to be false,

(4) that the debtor made with the intention of deceiving the creditor,

(5) upon which the creditor relied,

(6) that the creditor's reliance was reasonable,

(7) that damage proximately resulted from the representation."

*Candland,* 90 F.3d at 1469 (quoting *Siriani v. Northwestern Nat'l Ins. Co. (In re Siriani),* 967 F.2d 302, 304 (9th Cir.1992)). The threshold requirement is that the representation must be in the form of a written statement concerning the debtor's financial condition. 11 U.S.C. § 523(a)(2)(B) (1994).

1. *Statement In Writing.*

The bankruptcy court found that the use of the profit and loss statement satisfied the writing requirement of § 523(a)(2)(B). However, the court did not focus on the nature of this statement. Rather, the court concluded that failure to produce the "writing" did not bar Appellee from establishing the contents of the statement.[18]

As one important bankruptcy treatise has noted:

To come within the exception of § 523(a)(2)(B), the statement, to be "in writing," must either have been written by the debtor, signed by the debtor, or *written by someone else but adopted and used by the debtor.* The requirement of a writ-

---

**16.** Although the sublessee in *Apte* testified that he would not have entered the sublease had he known that the priority provision had been rejected by the lessor, unlike the instant case where there was no such testimony, the Ninth Circuit presumed reliance because the debtor had a duty to disclose material information and failed to do so. Because "positive proof of reliance is not a prerequisite to recovery" when a party with a duty to disclose a material fact fails to do so, *see Ute,* 406 U.S. at 153–54, 92 S.Ct. at 1472, reliance is inferred from the attorney-client relationship and Appellant's failure to disclose material facts as required under Rule 3–300.

**17.** Section 523(a)(2)(B) states in pertinent part:

(a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money . . . to the extent obtained by—

. . . .

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's . . . financial condition;
(iii) on which the creditor to whom the debtor is liable for such money . . . relied; and
(iv) that the debtor caused to be made or published with intent to deceive. . . .

11 U.S.C. § 523(a)(2)(B) (1994).

**18.** The court found that Appellant's admission that the statement was shown to Appellee satisfied the evidentiary requirement of Federal Rule of Evidence 1004 (where original is lost or destroyed, proponent may prove contents of a writing by other evidence).

ing is a basic precondition to nondischargeability under section 523(a)(2)(B).

4 COLLIER ON BANKRUPTCY, at ¶ 523.08[2][a] (Lawrence P. King, 15th ed. rev.1997) (emphasis added).

Here, the profit and loss statement was "in writing." Additionally, it was prepared by Appellant's assistant at Appellant's request and adopted and used by Appellant. Thus, the profit and loss statement qualified as a "statement in writing" for purposes of § 523(a)(2)(B).[19]

### 2. Concerning Appellant's Financial Condition.

Appellant questions whether a statement of earnings of this type constitutes a statement respecting a debtor's financial condition. He argues that the writing must be a statement of assets and liabilities. Appellant's Br., at 6 (citing *Zimmerman v. Soderlund (In re Soderlund)*, 197 B.R. 742, 745 (Bankr.D.Mass.1996) (holding that the statement in writing must reflect "an entity's overall financial health")).

■ As we recently noted,

"[t]here are two schools of thought regarding the correct interpretation of the term financial condition. One school holds that the term 'statement respecting the debtor's or an insider's financial condition' is to be strictly construed. The second view holds that a more expansive definition of the term financial statement should be adopted."

*Medley v. Ellis (In re Medley)*, 214 B.R. 607, 611 (9th Cir. BAP 1997) (quoting *Gehlhausen v. Olinger (In re Olinger)*, 160 B.R. 1004, 1007–08 (Bankr.S.D.Ind.1993)). There is no Ninth Circuit authority on this issue.

Under the broad view, it appears that any statement respecting a debtor's financial condition will meet the definition of the term "financial statement." [20] However, the narrow view holds that "[t]he ordinary usage of 'statement' in connection with 'financial condition' denotes either a representation of a person's overall 'net worth' or a person's overall ability to generate income." *Jokay Co. v. Mercado (In re Mercado)*, 144 B.R. 879, 885 (Bankr.C.D.Cal.1992). See also *Soderlund*, 197 B.R. at 745.

Here, because the profit and loss statement concerning Appellant's law practice falls within both the narrow and broad definitions, we need not decide the parameters of Congressional intent.[21] See *Medley*, 214 B.R. at 612.

### 3. The Bankruptcy Court Erroneously Concluded That The Written Statement Concerning Appellant's Financial Condition Was Materially False.

■ The bankruptcy court concluded that Appellant's presentation of his financial condition through the law firm's profit and loss statement amounted to a "half-truth" that was materially false. *Tallant*, 207 B.R. at 934. Appellant persuasively argues that the statement provided to Appellee was not a false statement regarding Appellant's financial condition, but rather, was an accurate

19. We also agree that, as an evidentiary matter, Appellee established by virtue of Appellant's admissions during trial the existence and contents of the statement. The consideration of this evidence falls within an exception to the "best evidence rule" and was, therefore, admissible. See Fed.R.Evid. 1004 (1997).

20. See *Bellco First Federal Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997) ("Congress did not speak in terms of financial statements. Instead it referred to a much broader class of statements—those 'respecting the debtor's ... financial condition.'") (quoting *Engler v. Van Steinburg*, 744 F.2d 1060, 1060–61 (4th Cir.1984) (citations omitted)); *In re Van Steinburg*, 744 F.2d 1060, 1060–61 (4th Cir.1984) (holding that "[a] debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition"); *McCrary v. Barrack (In re Barrack)*, 201 B.R. 985, 987–88 (Bankr.S.D.Cal.1996) (stating that oral misrepresentations about the debtors' ownership of a home, monthly income, value of assets, and ability to service a debt concerned their financial condition); *Phillips v. Napier (In re Napier)*, 205 B.R. 900, 905 (Bankr.N.D.Ill.1997) ("For purposes of § 523(a)(2), a written statement need not be either a formal balance sheet or a profit and loss statement.") (citations omitted) (holding that a rental application was a statement in writing concerning a debtor's financial condition).

21. The statement falls within the narrow definition of "financial statement" because it relates to Appellant's overall ability to generate income. See *Mercado*, 144 B.R. at 885. Thus, it necessarily falls within the broad definition.

statement of his firm's earnings. Thus, because the statement was accurate, the bankruptcy court erred in concluding that it was materially false. We agree.

We have previously recognized that "a materially false statement [is] ... one which 'paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect [sic] the decision to grant credit.'" *First Interstate Bank of Nevada v. Greene (In re Greene)*, 96 B.R. 279, 283 (9th Cir. BAP 1989) (citations omitted). Additionally, "'[m]aterial falsity' in a financial statement can be premised upon the inclusion of false information or upon the omission of information about a debtor's financial condition." *Id* . (citations omitted). Thus, "the omission, concealment or understatement of material liabilities can constitute a materially false statement and may lead to nondischargeability of the debt." *Id.* (citations omitted).

Here, the bankruptcy court improperly concluded that even though the profit and loss statement *related to Appellant's law practice* was accurate, Appellant's failure to include his *personal liabilities* (approximately $3 million) in this statement made the statement materially false. However, Appellant's personal liabilities were never addressed by Appellant in writing nor did Appellee request a statement in writing concerning Appellant's personal liabilities. Appellant's statement was procured for the purpose of showing that he had a successful law firm and that, even if his other sources of funding fell through, he was still capable of paying back the loan. This statement accurately portrayed the profitability of Appellant's law firm. There are no allegations that the statement omitted information concerning the liabilities of the law firm. Nor are there any allegations that the statement intended to reflect Appellant's personal financial condition or that the statement was procured for any purpose other than demonstrating the profitability of the law firm. Thus, it was clearly erroneous to conclude that the financial statement was materially false under § 523(a)(2)(B).[22]

22. Because we hold that the bankruptcy court committed clear error when it concluded that the nondisclosure of Appellant's personal liabilities in Appellant's financial statement related to the

## V. CONCLUSION

In summary, the bankruptcy court did not err when it concluded that Appellant's failure to disclose to Appellee that their interests had become adverse by virtue of entering into a debtor-creditor relationship and that Appellee had a right to seek independent legal counsel before loaning the $250,000 constituted a false representation under § 523(a)(2)(A). Similarly, the bankruptcy court's findings of intent, justifiable reliance, and proximate cause were not clearly erroneous.

However, the bankruptcy court committed clear error when it concluded that Appellant's written statement concerning the financial condition of his law firm was materially false under § 523(a)(2)(B).

Accordingly, we AFFIRM the part of the bankruptcy court's judgment that held that the debt was nondischargeable under § 523(a)(2)(A). However, we REVERSE the portion of the judgment that held the debt nondischargeable under § 523(a)(2)(B).

profitability of his law firm made the statement materially false, we need not address the remaining elements of § 523(a)(2)(B).