**In re Lanny R. HOWARTER, Debtor.**

**Fred COOKE, Appellant,**

**v.**

**Lanny R. HOWARTER, Appellee.**

**BAP No. SC–89–1165 VMoP.**
**Bankruptcy No. 85–00557.**
**Adv. No. C85–0829 MINV7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 14, 1989.

Decided May 18, 1990.

Steven L. Klein, San Diego, Cal., for appellant Fred Cooke.

William A. Smelko, San Diego, Cal., for appellee Lanny R. Howarter.

Before VOLINN, MOOREMAN and PERRIS, Bankruptcy Judges.

## AMENDED OPINION

VOLINN, Bankruptcy Judge:

Creditor Fred Cooke (Cooke) appeals an adverse judgment in a dischargeability case, specifically challenging the court's conclusion that a creditor, to establish non-dischargeability under 11 U.S.C. § 523(a)(2)(A), must prove that his reliance on the debtor's misrepresentations was reasonable. We AFFIRM.

## FACTS

The following account of the factual background is based upon the facts stipulated in the pretrial order, and the court's findings of fact, none of which have been expressly challenged.

The debtor, appellee Lanny R. Howarter (Howarter), had an investment business through which he invested his own money and solicited funds from others for various ventures, including Chacklan Enterprises, Inc. (Chacklan). Chacklan, which purchased seafood in Mexico for resale in the United States, came to the attention of appellant Cooke in March, 1984, when he asked his accountant David Taddeo (Taddeo) whether he knew of any good investments. Taddeo told Cooke about Chacklan, in which Taddeo had personally invested, and that he was also finding new Chacklan investors for Howarter. Cooke already knew Howarter, having previously invested with him successfully in another type of venture.

Howarter first became aware of potential problems with Chacklan during May, 1984, when he received a bad check for investor earnings. Although the check was made good, Howarter did not receive any payments after June 24, 1984. Nevertheless, he made payments to those who had invested through him as due during June, July, and August, 1984, from his own personal funds.

Howarter learned in August, 1984, that Chacklan had diverted investor monies from a collateral fund account, which he had been informed was intended to be used solely as security to obtain short term operating loans. Chacklan principals related that $7.1 million, including the investor funds, which were supposed to have been used for operations, was spent in obtaining contracts for the upcoming fishing season. Howarter also learned that a loan for operating was necessary and he advanced more of his own money for obtaining it.

Meanwhile, Cooke had called Howarter about Chacklan in late July and on August 12, 1984, when he was told by Howarter

that it was not a good time to invest in Chacklan. Cooke did not ask for an explanation. In late August, Cooke called again for an appointment to bring in money he had obtained to invest in Chacklan. Howarter warned over the phone essentially that Cooke should not make an investment in Chacklan with funds borrowed on the security of his personal residence. Cooke still did not ask for an explanation.

Cooke also learned independently from Taddeo on August 16, 1984 that no investor payments had been received from Chacklan in August; that investor funds, some $5.5 million, had been removed from the collateral funding account and taken to Mexico, leaving nothing in the bank; that Chacklan was trying to obtain a line of credit; and that Chacklan would require profits from the "whole shrimp season" to get the investors' money back. Thus in addition to Howarter's personal indications of Chacklan's financial distress, Cooke acquired information on August 16, 1984, which put him on notice that Chacklan's management had seriously compromised the economic basis of the venture. Yet despite these warning signals he did not inquire of Howarter concerning these problems.

On August 30, 1984, Howarter told Cooke that the investment was "full" and that Chacklan was seeking a line of credit. Cooke obtained a prospectus, a copy of which he had already seen through Taddeo, and about which he asked no questions. Howarter accepted $30,000 under an investment agreement, specifying that Cooke was investing at 4% per month and that his investment replaced Lanny Howarter's "personal funds previously invested."

Cooke's check was deposited in Howarter's personal account and used to pay his own obligations. Although Howarter took the position that retaining the $30,000 was equivalent to formally withdrawing $30,000 of his own investment and replacing it with Cooke's, he knew there were no funds in the collateral account.

It developed in the end that the $5.5 million withdrawn by Chacklan was not used to obtain contracts, but was misappropriated by its principals; the receipts purporting to document how the money was used were bogus. Chacklan's bankruptcy was filed on November 20, 1984. Howarter's involuntary bankruptcy followed in 1985.

PROCEDURAL BACKGROUND

Cooke commenced a dischargeability action on September 27, 1985, under Bankruptcy Code §§ 523(a)(2) and (a)(6). The case was tried solely under subsection (a)(2)(A).[1] The court then entered an order, reopening the record for the submission of briefs on the issue of "[w]hether a cause of action under § 523(a)(2)(A) includes as an element that a creditor's reliance must be reasonable." Both parties filed briefs.

The court thereafter filed its memorandum decision concluding that the reasonableness of the reliance is a necessary element of an action under § 523(a)(2)(A). *Cooke v. Howarter (In re Howarter)*, 95 B.R. 180, 191–92 (Bankr.S.D.Cal.1989). The court found that while there were no verbal misrepresentations, the prospectus Howarter gave Cooke was misleading because Howarter failed to disclose material information.[2] *Id.* at 188. The court also

1. Code section 523(a) provides for exception to discharge with respect to the following types of debt:
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
　(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
　(B) use of a statement in writing—
　(i) that is materially false;
　(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive;

　·　　·　　·　　·

2. Although not raised as an issue on appeal, we note that silence or concealment of a material fact can create a false impression that constitutes a misrepresentation actionable under section 523(a)(2)(A). *Minority Equity Capital Corp. v. Weinstein (Matter of Weinstein)*, 31 B.R. 804, 809–10 (Bankr.E.D.N.Y.1983) (citations omitted); *see also Haddad v. Haddad (In re Haddad)*,

found that Cooke relied on the omissions, based on the finding that Cooke would not likely have turned over his funds if Howarter had told him all the relevant facts. *Id.* at 188–89. Nonetheless, because of what Cooke learned from Taddeo concerning Chacklan's depletion of investor's funds, the court found that Cooke's reliance on the omissions was not reasonable because "Cooke had a duty to attempt to reconcile whatever Howarter may have represented with what Cooke had already learned." *Id.* at 192. The court therefore concluded that Cooke had failed to establish a case for nondischargeability under § 523(a)(2)(A).

Cooke has limited his appeal to the court's interpretation of law, explicitly waiving any challenge to the factual findings. Appellee questions whether the panel should consider the reasonableness issue, contending that there was insufficient evidence presented to support the court's finding of reliance in the first place.

## STANDARD OF REVIEW

■ Legal conclusions, including construction of the elements of a statutory cause of action, are reviewed *de novo.* *E.g., Rubin v. West (In re Rubin),* 875 F.2d 755, 758 (9th Cir.1989) (citing *Briney v. Burley (In re Burley),* 738 F.2d 981, 986 (9th Cir.1984)). Factual findings are reviewed for clear error. Bankr.R. 8013; *Rubin,* 875 F.2d at 758.

## DISCUSSION

### A. Reasonableness of Reliance

The Ninth Circuit has set forth the elements of a cause of action for fraudulent misrepresentation under § 523(a)(2)(A) as follows:

> [t]he elements ... are: (1) a representation of fact by the debtor, (2) that was material, (3) that the debtor knew at the time to be false, (4) that the debtor made with the intention of deceiving the creditor, (5) upon which the creditor relied, (6) *that the creditor's reliance was reason-*

*able,* and (7) that damage proximately resulted from the misrepresentation.

*Rubin,* 875 F.2d at 759 (emphasis added) (citing *Mortgage Guar. Ins. Corp. v. Pascucci (In re Pascucci),* 90 B.R. 438, 444 (Bankr.C.D.Cal.1988)).

While adverting to reasonableness of reliance, the Ninth Circuit has not specifically ruled on this issue, reserving it in *Rubin* because the creditors there demonstrated that their reliance was reasonable. *Rubin,* 875 F.2d at 759 n. 2. We faced this issue in *U.S. Life & Title Ins. Co. v. Kisich (In re Kisich),* where we held that reasonableness of reliance is a necessary element, finding that on the facts of that case, any reliance was so unreasonable as to amount legally to lack of reliance. 28 B.R. 401, 403–04 (9th Cir. BAP 1983). Decisions in other circuits dealing with this issue are in conflict, some holding that actual rather than reasonable reliance suffices, *e.g., Thul v. Ophaug (In re Ophaug),* 827 F.2d 340, 343 (8th Cir.1987), and others requiring reasonableness, *e.g., First Bank of Colorado Springs v. Mullet (In re Mullet),* 817 F.2d 677, 679–80 (10th Cir.1987); *Coman v. Phillips (In re Phillips),* 804 F.2d 930, 933 (6th Cir.1986); *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir. 1986); *First Nat'l Bank v. Kimzey (In re Kimzey),* 761 F.2d 421, 423 (7th Cir.1985).

■ In arguing that reasonableness of reliance should not be considered an element under section 523(a)(2)(A), appellant Cooke relies in part upon the different wording in subsection B, quoted above in footnote 1. Subsection B concerns nondischargeability of a debt arising from the use of a false written financial statement and lists what the creditor must prove, including that he "reasonably relied." The element of reasonable reliance is not specifically stated in subsection A. In that regard we hold that by referring to "false pretenses, a false representation or actual fraud" (all common law causes of action), subsection A incorporates the elements of proof required by the common law, one of

21 B.R. 421, 423–24 (9th Cir. BAP 1982) (rejecting the trial court's conclusion under section 523(a)(2) that fraud cannot be implied from a

failure to volunteer information), *aff'd without opinion,* 703 F.2d 575 (9th Cir.1983).

these elements being reasonable reliance as indicated by *Rubin, supra.  See also Mullet,* 817 F.2d at 679–80;  *Phillips,* 804 F.2d at 933;  *Hunter,* 780 F.2d at 1579;  *Kimzey,* 761 F.2d at 423.

### CONCLUSION

■ Notwithstanding Cooke's formulation of the issue on appeal, the court below was grappling with whether Cooke could claim any reasonable reliance on Howarter's representations.  The primary questions were whether Howarter had a duty to tell Cooke what he did not disclose, and whether his alleged failure to divulge additional information was neutralized by Cooke's determination to invest without Howarter's solicitation and despite what Taddeo and Howarter offered as to the negative aspects of the venture.  In effect, the court ultimately decided that because Cooke had already received sufficient warning signals with respect to the information not disclosed, he was not injured by Howarter's failure to cover the same subject matter mentioned by Taddeo.  To put it otherwise, Cooke had no right to rely upon Howarter to disclose what he had already discovered.  We therefore AFFIRM.