**In re Deborah A. DEMAREST and Stephen H. Demarest, Debtors.**

**RAINIER TITLE COMPANY, INC., a Washington corporation, Plaintiff,**

v.

**Deborah A. DEMAREST and Stephen H. Demarest, Defendants.**

**Bankruptcy No. 94–01292.
Adv. No. A94–04841.**

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

Jan. 12, 1995.

---

Kary L. Krismer, Seattle, WA, for debtors/defendants.

Timothy N. Lang, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Seattle, WA, for plaintiff.

## MEMORANDUM OPINION

SAMUEL J. STEINER, Bankruptcy Judge.

This matter is before the Court on the defendants' motion for reconsideration of the Court's order granting summary judgment of nondischargeability in favor of the plaintiff.

### I. *Facts*

In September, 1991, the debtors entered into a purchase and sale agreement for the sale of their Tacoma home to Charlaine and Richard Boyce. The agreement required the debtors to convey clear title to the property. The title was encumbered by a deed of trust in favor of Meridian Mortgage, successor to Citizens' Federal Savings and Loan Association. According to the debtors, they disclosed the Meridian deed of trust on the purchase and sale agreement. However, Rainier Title Company, which provided title insurance, overlooked Meridian's interest when researching the title. As a result, Meridian was not paid out of closing.

Debtor Stephen Demarest, an attorney, became aware of the error when he reviewed the closing documents. According to his August 9, 1994, declaration, he assumed the escrow agent had made a mistake. Mr. and Mrs. Demarest both signed the closing documents, including a statutory warranty deed. Mr. Demarest did not mention the error, thinking the escrow agent might discover it before issuing checks. Later, Mrs. Demarest picked up the check for proceeds and took it to her husband's office. She realized that the check was approximately $65,000 too high, and she remarked to her husband that the amount must be wrong. Mr. Demarest called the escrow agent in her presence and left a message requesting verification of the amount. The agent returned the call and confirmed that the amount was correct. According to his declaration, Mr. Demarest then assumed either that Meridian's deed of trust had been improperly recorded or that Rainier Title had overlooked it when searching the record. Mrs. Demarest, a flight attendant, had to leave town, but she was aware that the error still had not been clarified. She endorsed the check, leaving it to her husband to handle the matter.

At the time of this transaction, the debtors were in the process of buying a bed and breakfast in Friday Harbor, Washington, and selling another property known as Yacht Club Estates. Mr. Demarest stated in his declaration that the debtors hoped to receive the downpayment from the Yacht Club Estate sale prior to its closing so they could use it to fund the downpayment for the bed and breakfast. However, they were not certain that they would receive the funds in time. They retained the $65,000 that should have gone to Meridian and used it initially for the downpayment on the bed and breakfast. Later they put it back into their account as part of a loan from their seller and thereafter used it in their other business ventures.

The debtors continued making monthly payments to Meridian pursuant to the note, but they did not maintain homeowner's insurance. Not until Meridian discovered the lack of insurance did the debtors disclose that they had sold the house. Meridian then obtained a lender's policy and began allocating a portion of the monthly payments to the insurance premiums. The debtors balked at this and stopped making monthly payments in July, 1993. Meridian commenced foreclosure proceedings. Rainier then paid Meridian, took an assignment of the Demarest note and deed of trust, and sued the debtors in state court.

## II. *Procedure/Issues*

The debtors filed their chapter 7 petition on February 16, 1994, and Rainier filed this adversary proceeding alleging that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2). The debtors filed a motion for summary judgment on August 15, 1994, and Rainier followed with a motion to amend its complaint to add claims under §§ 523(a)(4) and (6). The debtors opposed the amendment and responded on the merits of the new claims. The Court implicitly allowed the amendment, found the debt nondischargeable as a matter of law under §§ 523(a)(2) and 523(a)(6), and *sua sponte* granted summary judgment in favor of Rainier Title Company.

Next, the debtors moved for reconsideration, urging the Court to vacate its summary judgment on both claims. As to the § 523(a)(2) claim, the Court's *sua sponte* entry of summary judgment to the nonmoving party was procedurally proper, since there was no genuine issue of material fact and the uncontroverted facts support such a ruling. *Portsmouth Square, Inc. v. Shareholders Protective Committee*, 770 F.2d 866, 869 (9th Cir.1985). However, the debtors contend that the Court erred on the merits. The debtors also contend that the Court improperly granted summary judgment under § 523(a)(6), both on the merits and because there was no motion before the Court. Finally, the debtors assert that Mrs. Demarest's separate liability to Rainier should be discharged, and they present additional facts in support of that contention. The issues are thus whether the undisputed facts support summary judgment under §§ 523(a)(2) and (6) as to Mr. Demarest and hence the community, and further whether the debtors have raised a genuine issue of material fact concerning the separate liability of Mrs. Demarest.

In order to prevail on their motion for reconsideration, the debtors must show "manifest error in the prior ruling or . . . new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." CR 7(e)(1), Local Rules W.D.Wash.; LBR 9013(h).

### III. Discussion

■ **A. Liability of Mr. Demarest and the Community Under § 523(a)(2).** Section 523(a)(2)(A) of the Bankruptcy Code provides for the nondischargeability of any debt to the extent incurred by "false pretenses, a false representation, or actual fraud. . . ." To establish fraud, the plaintiff must show that it was damaged by the defendant's knowing misrepresentation of material fact, made with the intention to deceive, and on which the plaintiff relied. In re Kirsh, 973 F.2d 1454 (9th Cir.1992).

■ Section 523(a)(2)(A) includes both false representation, which is an express misrepresentation, and false pretense, which involves "an implied misrepresentation or conduct intended to create and foster a false impression." Matter of Weinstein, 31 B.R. 804, 809 (Bankr.E.D.N.Y.1983). It is well settled that silence can create a false impression, providing the basis for a misrepresentation that is actionable under § 523(a)(2)(A). In re Howarter, 114 B.R. 682, 684–85 n. 2 (9th Cir. BAP 1990); Haddad v. Haddad (In re Haddad), 21 B.R. 421, 423–24 (9th Cir. BAP 1982), aff'd without opinion, 703 F.2d 575 (9th Cir.1983).

The debtors do not suggest that fraud cannot be inferred from silence or that the existence of the Meridian deed of trust was not material. Instead, they contend that the elements of intent and reliance are lacking. They maintain further that the title company is not subrogated to a nondischargeability claim which may have been held by the buyer or the mortgagee.

■ **1. Intent.** Mr. Demarest states that he lacked fraudulent intent, because he intended to pay back the money when he received funds from the Yacht Club Estates closing, which he estimated to be within forty-five days. When that sale failed to close, the debtors made monthly payments for a period of time, which they contend illustrates their good intentions. The issue, however, is not whether the debtors intended to pay back the money. The tacit representation to Rainier was that all encumbrances were being satisfied out of closing, and that the debtors were delivering clear title to property. Based on this representation, the debtors acquired approximately $65,000 which they would not have otherwise obtained. The situation is analogous to one in which a debtor has obtained an extension of credit by false pretenses. The intent issue thus revolves around the procurement of the funds, not the intent to repay or not to repay.

Mr. Demarest clearly knew that if the Rainier/Meridian encumbrance was not discovered, he and his wife would receive that money from closing. Had he not intended this result, he would have disclosed the error. Further, Mr. Demarest knew that the mistake was either Meridian's or Rainier's, and that one or the other would bear any loss that may ultimately ensue. Accordingly, the Court concludes that these facts demonstrate an intent to deceive not only Meridian but Rainier as well.

**2. Reliance.** The debtors contend further that Rainier did not rely or did not reasonably rely on their silence regarding title. The argument is based primarily on In re Kisich, 28 B.R. 401 (9th Cir. BAP 1983). In Kisich, the debtor wife sold her home, which was encumbered by a 16–year–old IRS lien. The title report did not reveal the lien. According to the debtor's uncontroverted declaration, she informed the title company of the lien. She then assumed it had lapsed, because the title company assured her that there was no IRS lien of record. Two years after closing, the IRS threatened to foreclose, and the title company satisfied the lien. The debtors sought a declaratory ruling from the bankruptcy court that the title company held no valid nonvoidable liens against the property.

The title company claimed that the debt was nondischargeable under § 523(a)(2), on the basis of Mrs. Kisich's alleged omission of material facts. On this issue, the Court held that the debtor lacked the requisite intent to

deceive, in that the title company had not refuted the debtor's declaration that she had in fact disclosed the existence of the tax lien. This finding would alone have been sufficient to support a ruling in favor of the debtors. However, the Court found in addition that the element of reliance had not been satisfied.

At the time *Kisich* was decided, the courts were employing a reasonableness standard for reliance. That is, not only must the creditor have in fact relied, its reliance must have been reasonable under the circumstances. Applying this standard, the *Kisich* Court concluded that the buyer did not in fact rely on the debtor's representations regarding title, since it relied solely on the conclusions of the title company. As to the title company, the Court announced what amounts to a *per se* rule that title companies can never satisfy the reliance requirement of § 523(a)(2)(A):

> [I]t is patently unreasonable for the appellant [title company] to have relied on the debtors' representations since the very essence of a title insurer's function is to ascertain the state of the title to property....
>
> The appellant has been compensated by the [buyers] for undertaking such a risk. Section 523(a)(2) was never intended to be used by errant insurers to shift the risk of loss to the debtor.

*Id.* at 403–04.

This Court concludes that *Kisich* does not control the results of this case. First, the uncontroverted evidence was that Mrs. Kisich did not remain silent when presented with the title company's mistake. There having been no misrepresentation, the Court did not have to reach the issue of reliance, and its sweeping statements in that regard are therefor dicta. Further, this Court agrees with the dissent, which stated, "The majority's view that § 523(a)(2) was never intended to be used by errant insurers to shift the risk of loss to the debtor is unsupported by authority or reason." *Id.* at 405. Not only is the majority's conclusion unsupported, it is contrary to Ninth Circuit authority and the conclusions of other courts as well.

In *In re Kirsh,* the Ninth Circuit addressed the standard of reliance required under § 523(a)(2)(A). In so doing, the Court established two principles: first, that § 523(a)(2)(A) encompasses the common law elements of fraud, and second, that in false representation cases, the plaintiff must show that reliance was justifiable. In adopting the common law standard of justifiable reliance, the Court resolved for this Circuit a split of authority. *See, e.g. In re Ophaug,* 827 F.2d 340 (8th Cir.1987) (requiring actual reliance only); and *In re Mullet,* 817 F.2d 677 (10th Cir.1987) (requiring that reliance be reasonable). Prior to *Kirsh,* the Ninth Circuit had, without analysis, required a showing of reasonableness. *In re Rubin,* 875 F.2d 755 (9th Cir.1989). To determine the content of the common law, the *Kirsh* Court cited both *Prosser and Keeton on the Law of Torts* and *Restatement (Second) of Torts.* According to *Prosser and Keeton,* the reason that reliance must be justifiable is to " '[p]rovide some objective corroboration to plaintiff's claim that he did rely' (citation omitted.)" *In re Kirsh, supra,* at 1458. Reliance, on the other hand, establishes the causal relation between the defendant's action and the plaintiff's injury. *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

In *In re Harris,* 458 F.Supp. 238 (D.Or. 1976), *aff'd Matter of Harris,* 587 F.2d 451 (9th Cir.1978), a case decided under the Bankruptcy Act, the Court recognized that the standard of reliance for nondisclosure necessarily differs from the standard applicable to affirmative misrepresentation. In instances of nondisclosure, it is impossible to demonstrate reliance, since to do so requires proof of a speculative state of facts, *i.e.* how one would have behaved if omitted material information had been disclosed. Relying on *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), a securities fraud case from the Supreme Court, the Oregon Court concluded that the common law does not require positive proof of reliance in concealment cases.

> All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this deci-

sion. . . . This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact. 458 F.Supp. at 242, quoting from 406 U.S. at 153–54, 92 S.Ct. at 1472. *Accord, Basic Inc. v. Levinson, supra* (1988). In a brief opinion affirming the District Court in *Harris,* the Ninth Circuit adopted both the reasoning and the conclusions of the lower court. Hence this Court concludes that *Harris,* not *Kisich,* reflects the Ninth Circuit standard on the issue of reliance in cases of fraudulent concealment.

As noted by the plaintiff, in *In re Homer,* 168 B.R. 790 (Bankr.N.D.Ga.1994), a Georgia Bankruptcy Court rejected the broad statement of the *Kisich* panel "to the extent it might be read to imply that lenders and title insurers are always charged with knowledge of the public record." *Id.* at 803. The Georgia Court's conclusion is based in part on the Ninth Circuit's language in *In re Kirsh,* as follows:

> A plaintiff must show that "he was justified in his reliance," but negligence in failing to discover an intentional misrepresentation is no defense . . . Moreover, "[t]he fact that an investigation would have revealed the falsity of the misrepresentation will not alone bar his recovery, and it is well established that he is not held to constructive notice of a public record which would reveal the true facts."

*Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh),* 973 F.2d 1454, 1459 (9th Cir.1992), *quoting* Justice Roger Traynor in *Seeger v. Odell,* 18 Cal.2d 409, 414–15, 115 P.2d 977 (1941). *Id.* at 803.

■ In short, where an individual knows, as did these debtors, that another is acting without knowledge of material facts, the reliance element is satisfied by objective proof, i.e. whether a reasonable person might have considered the facts important to his or her decision. Conversely, it is not a defense that the plaintiff's lack of knowledge was based on his own negligence in ascertaining the truth. In this case, the debtor husband, an attorney, experienced in real estate matters, knew that the title company was undertaking to ensure a defective title, and further that it was relying on incorrect information. Yet he did nothing to dispel the false impression under which the title company was operating, and he even signed a warranty deed. He may have disclosed the encumbrance on the purchase and sale agreement. However, that did not discharge his duty to disclose the error to the title company. He also asked one limited question of the escrow agent, thereby confirming for himself that the error was not a mathematical one but rather "that either the deed of trust was improperly recorded (and not in the chain of title), or that the title company had been negligent in searching the record." Declaration of Stephen Demarest. This phone call did not discharge the debtors' duty to disclose the error to the title company. To the extent that *Kisich* permits a different result, it should be confined to its facts.

The Court need not address the debtor's arguments concerning the subrogation of Rainier to claims of the buyer or Meridian, since the proof establishes a direct fraud on Rainier through the use of false pretenses. *Matter of Weinstein, supra,* cited with approval in *In re Howarter,* 114 B.R. at 685, n. 2.

**B.** ***Separate Liability of Mrs. Demarest Under § 523(a)(2)(A).*** The Ninth Circuit addressed the issue of spousal liability for a false financial statement in *In re Lansford,* 822 F.2d 902 (9th Cir.1987). There the Court concluded that Cecily Lansford was culpable by virtue of her own involvement in the transaction, notwithstanding that it was her husband who actually prepared the statement. Her involvement included the following:

> [B]oth defendants had a hand in initiating discussions with La Trattoria, even if through John Lansford. . . . Cecily Lansford was the one who discovered the possible restaurant venture, and . . . she was a signatory on the financing arrangement of the real estate project that went into default the status of which was misrepresented to La Trattoria. Finally, she signed the purchase documents transferring the restaurant from La Trattoria to the Lansfords, which documents repeat one of the

more egregious misrepresentations contained in the financial statement.

*Id.* at 905.

While the Court found this evidence "far from overwhelming," it was sufficient to uphold the trial court's ruling that both defendants were responsible for the false financial statement.

The Court expressed relief that it was able to avoid the issue whether the husband's fraud could be imputed to the wife under agency principles. *In re Cecchini,* 780 F.2d 1440 (9th Cir.1986), holds that a business partner's wrongful conduct can be imputed to a debtor for purposes of § 523(a)(6) when the partner was acting in the ordinary course of business and the debtor shared in the benefits of the wrongful conduct. In *Lansford,* the Court implied that *Cecchini* might be overly broad in light of the Bankruptcy Code's purpose of providing a fresh start, stating that "the breadth of the proposition stated in *Cecchini* deserves more thorough consideration before its application to the circumstances presented in this case." *In re Lansford, supra* at 905.

 The Court concludes that the facts as described in Mrs. Demarest's declaration establish separate culpability on her part. The undisputed facts are that Mrs. Demarest signed the closing documents, including the statutory warranty deed, and that she knew of the existence of the Meridian deed of trust. She noticed the mistake when she saw the check. She was present when her husband called the escrow company and when the agent returned his call, verifying that there had been no error on its part. Being aware of the mistake, Mrs. Demarest had an independent duty to disclose it or ensure that her husband did. Instead, she endorsed the check and allowed the funds to be used as a downpayment for the bed and breakfast which was placed in her name. In short, Mrs. Demarest participated in the concealment which resulted in a direct benefit to her.

 **C. *Liability Under § 523(a)(6).***
After allowing the plaintiff to amend its complaint to add a cause of action under § 523(a)(6), the Court granted summary judgment on that basis. The defendants have moved for reconsideration, contending that the matter was not before the Court, and that the ruling lacked substantive merit. The Court agrees with the debtors' position, namely that the plaintiff has not stated a proper legal basis for a claim under § 523(a)(6).

The plaintiff's theory is that the debtors held the $65,000 in constructive trust and thereafter converted the funds. This approach misconstrues the nature of constructive trust. In *In re Tleel,* 876 F.2d 769 (9th Cir.1989), the Court noted that constructive trust is not actually an interest in property but rather an equitable remedy, which is inchoate until impressed by a court on specific property. The remedy is appropriate where one is under an equitable duty to convey property to another on the ground that he would be unjustly enriched if he were permitted to retain it. *Baker v. Leonard,* 120 Wash.2d 538, 548, 843 P.2d 1050 (1993). If the money which the debtors obtained, that is the $65,000, still existed, the circumstances would surely justify the imposition of a constructive trust. However, the funds do not exist, and they were never impressed with a trust. Accordingly, the plaintiff's theory fails, and the motion for reconsideration on this issue should be granted.

### IV. *Conclusion*

A. The defendants/debtors' motion for reconsideration of the Court's Order granting the plaintiff judgment pursuant to § 523(a)(2) of the Bankruptcy Code should be denied.

B. The defendants/debtors' motion for reconsideration of the Court's Order granting summary judgment to the plaintiff pursuant to § 523(a)(6) of the Bankruptcy Code should be granted.