

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MICHAEL ADRIAN MANION,<br>　　　　　Debtor. | BAP No. NV-24-1088-LBF |
| MICHAEL ADRIAN MANION,<br>　　　　　Appellant,<br>v.<br>STRATEGIC FUNDING SOURCE, INC.,<br>d/b/a KAPITUS, INC.,<br>　　　　　Appellee. | Bk. No. 21-15132-nmc<br><br>Adv. No. 22-01005-gs<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Gary A. Spraker, Bankruptcy Judge, Presiding

### APPEARANCES

Troy Stephens Fox of Fox, Imes & Crosby, LLC argued for appellant; Ryan Jefferson Works of McDonald Carano LLP argued for appellee.

Before: LAFFERTY, BRAND, and FARIS, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

### INTRODUCTION

Michael Adrian Manion ("Debtor") appeals the bankruptcy court's judgment determining that the debt he owes to Strategic Funding Source,

Inc., d/b/a Kapitus, Inc. ("Kapitus") is nondischargeable under § 523(a)(2)(A).[1]

Debtor sought financing from Kapitus to continue operating his mobile bar unit business, Draft Bars, LLC ("Draft Bars"). Draft Bars initially benefited greatly from an arrangement with Anheuser-Busch to operate the brewery's out-of-state bar units. Around the same time Debtor began negotiations with Kapitus, however, Anheuser-Busch terminated its out-of-state operation agreement with Draft Bars. Even though this termination significantly altered Draft Bars' financial condition as reflected in documents furnished to Kapitus, Debtor failed to disclose the termination to Kapitus. Kapitus thus agreed to finance Draft Bars without knowledge of an important fact concerning Draft Bars' financial viability.

Thereafter, Debtor failed to make required payments to Kapitus. A few months after entering into the agreement with Kapitus, Debtor filed for bankruptcy protection. Kapitus timely filed a complaint requesting that the debt owed to it be deemed nondischargeable under, among other statutes, § 523(a)(2)(A).

After trial, the bankruptcy court held that Debtor fraudulently omitted a material fact which he had a duty to disclose, namely, the fact that Draft Bars lost the ability to operate Anheuser-Busch's out-of-state mobile bar units.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

We AFFIRM. We publish to clarify the standards applicable to a claim for fraudulent omissions under § 523(a)(2)(A).

## FACTS

### A.    Draft Bars and its arrangement with Anheuser-Busch.

Prepetition, Debtor had an ownership interest in Draft Bars, a company that built and operated mobile bar units called "bar pods." In 2015, Debtor, on behalf of Draft Bars, secured purchase orders from Anheuser-Busch for the construction and delivery of bar pods.[2] Subsequently, Draft Bars began operating the bar pods for Anheuser-Busch at various events.

Draft Bars was initially successful in its venture. In 2015, the company earned gross revenue of $2.7 million, with revenue increasing to $5.6 million in 2016. However, in May 2016, circumstances began to change. Around this time, Debtor expressed frustration with Anheuser-Busch's lack of response to Draft Bars' proposals to formalize the arrangement and its failure timely to pay money owed to the company. According to Debtor, among other concerns, Anheuser-Busch's delays were straining Draft Bars' relationships with subcontractors.

Although the record does not reflect an exact date, sometime in May or June 2016, Anheuser-Busch terminated its arrangement with Draft Bars

---

[2] During this period, Draft Bars obtained funding to build Anheuser-Busch's bar pods by selling its accounts receivable to JD Factors, LLC ("JD Factors") under a factoring agreement.

that allowed the company to operate Anheuser-Busch's out-of-state bar pods. In furtherance of this termination, throughout the summer of 2016, Anheuser-Busch proceeded to repossess a number of its bar pods, preventing Draft Bars' use of the pods.[3]

**B.     Draft Bars' agreement with Kapitus.**

Around the same time, in June 2016, Draft Bars and Kapitus commenced discussions about entering into a factoring agreement, under which Kapitus would provide funding to Draft Bars by purchasing some of Draft Bars' accounts receivable. As part of this process, Draft Bars provided Kapitus a balance sheet as of May 31, 2016, prepared on a cash basis. The balance sheet reflected $13,848.18 in Draft Bars' bank account.

Draft Bars also provided a profit and loss statement for the months of January through May 2016. The profit and loss statement reflected a total income of $4,828,613.41, with $3,670,749 of this revenue being attributed to Anheuser-Busch, and an additional $1,057,011.29 attributable to Draft Bars' factoring agreement with JD Factors, which itself was related to Draft Bars' plan to build bar pods for Anheuser-Busch. Both this profit and loss statement and a subsequent profit and loss statement furnished by Draft

---

[3] The record is unclear regarding when exactly Anheuser-Busch collected the last of the bar pods from Draft Bars, but the bankruptcy court found this likely occurred prior to August 1, 2016. In any event, the parties do not dispute that Anheuser-Busch terminated Draft Bars' management of out-of-state bar pods in May or June of 2016, i.e., before Draft Bars entered into its factoring agreement with Kapitus, as discussed below. Debtor only disputes the materiality of this changed relationship.

Bars reflect that Draft Bars' revenue from non-Anheuser-Busch operations was minimal.

In July 2016, Debtor, on behalf of Draft Bars and related entities, signed a Revenue Based Factoring Agreement, Security Agreement and Guaranty (the "Factoring Agreement") provided by Kapitus. Through the Factoring Agreement, Kapitus purchased $472,500 of Draft Bars' future receivables for $350,000. Pursuant to the Factoring Agreement, Draft Bars was obligated to pay $19,687.50 to Kapitus on a biweekly basis independent of any actual collections by Draft Bars into its accounts.

The Factoring Agreement also included certain representations regarding Draft Bars, including the following:

> Merchant represents, warrants and covenants that as of this date and during the term of this Agreement[,] . . . [i]ts bank and financial statements, copies of which have been furnished to [Kapitus], and future statements which will be furnished hereafter at the discretion of [Kapitus], fairly represent the financial condition of Merchant at such dates and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant.

Section 2.1, Factoring Agreement.

After Draft Bars signed the Factoring Agreement, but before Kapitus signed the agreement, Kapitus visited Draft Bars as part of its due diligence process. Debtor also participated in a "Pre-Funding Call" with Kapitus as a prerequisite to obtaining funding from Kapitus.

It is undisputed that, during this process, Debtor did not disclose that Anheuser-Busch had terminated Draft Bars' operation of the out-of-state bar pods. It is also undisputed that Kapitus did not request documentation evidencing Debtor's ongoing relationship with Anheuser-Busch, such as contracts or proof of future receivables. In July 2016, Kapitus advanced $350,000 to Draft Bars in accordance with the Factoring Agreement.

## C.  Draft Bars' default and Debtor's bankruptcy filing.

Draft Bars soon defaulted on the Factoring Agreement.[4] In 2018, Kapitus sued Debtor and other parties in the Virginia Circuit Court, asserting causes of action for breach of contract and fraud. After Debtor did not respond to this complaint, Kapitus obtained a default judgment in its favor from the Virginia court.

Subsequently, Debtor filed a chapter 7 petition, scheduling Kapitus as an unsecured creditor. In January 2022, Kapitus filed a complaint against Debtor requesting nondischargeability of the debt owed to it pursuant to § 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).

On January 30 and 31, 2023, the bankruptcy court held trial on Kapitus' complaint against Debtor. Thereafter, the court issued a Memorandum of Decision concluding that the debt owed to Kapitus is nondischargeable under § 523(a)(2)(A) based on Debtor's failure to disclose Draft Bars' loss of the national bar pod operations with Anheuser-Busch.

---

[4] In December 2016, Draft Bars filed a chapter 11 bankruptcy petition. Draft Bars' case was later converted to a chapter 7, fully administered, and closed.

The court denied relief under all other claims asserted by Kapitus. Later, the court entered judgment in favor of Kapitus in accordance with its Memorandum of Decision. Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction over this appeal under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in determining that the debt owed to Kapitus is nondischargeable under § 523(a)(2)(A)?

## STANDARDS OF REVIEW

In an appeal from a judgment of nondischargeability, we "review a bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo." *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 378 (9th Cir. BAP 2011). "Whether a requisite element of a § 523(a)(2)(A) claim is present is a factual determination reviewed for clear error." *Tallant v. Kaufman (In re Tallant)*, 218 B.R. 58, 63 (9th Cir. BAP 1998) (citing *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1283 (9th Cir. 1996)). A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

Section 523(a)(2)(A) excepts from discharge a debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement

respecting the debtor's or an insider's financial condition." Generally, to prove a claim under § 523(a)(2)(A), a plaintiff must prove the following:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000). In cases involving fraudulent **omissions**, instead of fraudulent **representations**, "the nondisclosure of a material fact in the face of a duty to disclose has been held to establish the requisite reliance and causation for actual fraud under the Bankruptcy Code." *Apte v. Romesh Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1323 (9th Cir. 1996).

On appeal, Debtor asserts that the bankruptcy court erred in concluding that Debtor fraudulently omitted Draft Bars' loss of its national bar pod operations with Anheuser-Busch during the months leading up to the execution of the Factoring Agreement. Specifically, Debtor argues that: (i) the subject "omission" was not an "omission" but an affirmative "statement;" (ii) Debtor did not have a duty to disclose the changed relationship between Anheuser-Busch and Draft Bars; (iii) the changed relationship did not qualify as a material fact; and (iv) notwithstanding this Panel's prior decision holding otherwise, an "omission" qualifies as a

"statement" and, as a result, the subject "omission" about Debtor's financial condition is not within the purview of § 523(a)(2)(A). We disagree.

## A. The bankruptcy court did not err in finding that Debtor made an "omission" instead of a "statement."

As is evident from the statutory language of § 523(a)(2)(A) quoted above, the statute excludes from its reach "statement[s] respecting the debtor's or an insider's financial condition." Such statements are instead governed by § 523(a)(2)(B).

Debtor first asserts that he did not make an omission for purposes of § 523(a)(2)(A) at all. Specifically, Debtor references Section 2.1 of the Factoring Agreement, which includes a representation that the financial documents provided to Kapitus were accurate and that there were "no material adverse changes" to Draft Bars since the dates reflected on those documents. According to Debtor, this representation indicates that Debtor did not believe that the loss of Draft Bars' national bar pod operations was material and, as a result, he did not actually omit required information. In other words, Debtor contends that he affirmatively represented accurate information, i.e., that no material changes had occurred. And, to the extent this representation was false, Debtor further asserts that such affirmative representations about Draft Bars' financial condition should have been analyzed under § 523(a)(2)(B).

Debtor's position is not supported by the law. As thoroughly explained by the Supreme Court, § 523(a)(2)(A) encompasses a broad range

9

of fraudulent acts, including not only fraudulent representations and omissions, but also deceptive conduct. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 360-62 (2016). At times, the same fraudulent conduct may give rise to multiple claims under multiple different subsections of § 523. *Id.* at 363-64. For instance, a trustee who engages in fraudulent conduct may be liable under both § 523(a)(2)(A) and (a)(4). *Id.* at 363. "There is, in short, overlap, but that overlap appears inevitable." *Id.* Despite any overlap, the different subsections of § 523 have "meaningful distinctions" and cover different types of conduct. *Id.*

Similarly, such overlap also is inevitable where a debtor fraudulently induces a creditor to enter into a transaction and, in so doing, makes both fraudulent representations and omissions. Nothing in the plain language of § 523(a)(2)(A) prevents plaintiffs from prosecuting, and courts from adjudicating, nondischargeability of a debt based on multiple misrepresentations and omissions, whether those misrepresentations and omissions are related in subject matter or not.

We recognize that this analysis may be much murkier in cases where the alleged fraudulent omission is the direct inverse of an alleged fraudulent representation. For example, where plaintiffs allege that a debtor fraudulently represented that he had $1 million in the bank, and also that the debtor omitted the fact that he had $0 in the bank, it is unclear if the statutory scheme set forth in § 523(a)(2) would require plaintiffs to prove their claim as a representation about the debtor's financial condition

10

under § 523(a)(2)(B), or if plaintiffs could instead bring a claim for fraudulent omission under § 523(a)(2)(A).

We need not reach that question here. Debtor's boilerplate, broad representation regarding materiality is not the direct inverse of the omission alleged by Kapitus, i.e., that Debtor did not disclose the loss of Draft Bars' business with Anheuser-Busch. Where an affirmative representation is as broad and ambiguous as it is here, we see no reason to foreclose plaintiffs from prosecuting a claim for a fraudulent omission under § 523(a)(2)(A) simply because the omission is related to an affirmative representation made by the debtor.

Such a holding would essentially erase fraudulent omissions from the purview of § 523(a)(2)(A); in most cases, debtors could simply reference loosely related affirmative representations and require plaintiffs to prove their claims under the stricter standards related to fraudulent representations. This would often be an impossible feat for plaintiffs, who would have to demonstrate reliance on a fact they never knew. This was precisely the reason that authorities developed a different standard for fraud based on omissions. Debtor's proposed interpretation would swallow that standard entirely. *See In re Apte*, 96 F.3d at 1323.

At most, Debtor presented a simple overlap, similar to *Husky*, of Kapitus' potential claims against Debtor under § 523(a)(2)(A) and (a)(2)(B).[5]

---

[5] Even when there is significant overlap, there are "meaningful distinctions" between claims for fraudulent representations and claims for fraudulent omissions. *See*

11

However, because those claims are not directly inverse to each other, we need not decide whether Kapitus had an obligation to prosecute its claim as an affirmative, written representation under § 523(a)(2)(B).

In addition to the above, with respect to Debtor's opinions about the materiality of the omission, the court found Debtor's testimony regarding Draft Bars' financial condition and the significance of the loss of business with Anheuser-Busch lacking in credibility. Bankruptcy courts enjoy substantial discretion in weighing evidence and making determinations as to credibility following a trial. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

Although Debtor may dispute the bankruptcy court's credibility determination, we note that, in this context, "credibility" has two meanings. First, the term refers to a trial court's assessment of a witness's truthfulness or, conversely, an inferred intent to deceive or obfuscate, based on observations of the demeanor and bearing of the witness and assessments of the witness's potential motivations to be candid.

Second, the term refers to a trial court's assessment of the persuasiveness of a witness's testimony, based on the witness's personal knowledge and expertise, and the degree to which the witness's statements

---

*Husky Int'l Elecs., Inc.*, 578 U.S. at 363. The former requires a showing of reliance, whereas the latter requires a finding of materiality as well as a duty to disclose. Thus, even where plaintiffs allege that both an affirmative representation and its directly inverse omission were fraudulent, they must prove up their claims using different standards.

corroborate other objectively confirmable facts about the subject matter addressed and promote common sense. It is this second aspect of credibility that is directly relevant to the bankruptcy court's assessment of Debtor's testimony concerning Draft Bars' financial condition. In other words, the record thoroughly supports the court's credibility finding with respect to Debtor's testimony about Draft Bars' financial projections.

Given that we will not disturb the court's credibility finding, and in light of our discussion regarding materiality in Section C below, Debtor's argument that Section 2.1 contains a true, affirmative representation is without merit.

**B.     The bankruptcy court did not err in finding that Debtor had a duty to disclose Draft Bars' loss of national bar pod operations with Anheuser-Busch.**

"In determining the duty to disclose in the context of fraud under 11 U.S.C. § 523(a)(2)(A), we look to the common law concept of fraud at the time such language was added to the statute." *In re Apte*, 96 F.3d at 1324 (citing *Field v. Mans*, 516 U.S. 59 (1995)). "The Supreme Court in *Field* looked to the Restatement (Second) of Torts (1976) as 'the most widely accepted distillation of the common law of torts' at the relevant time." *Id.* (quoting *Field*, 516 U.S. at 70). Pursuant to the Restatement, and as relevant to this matter, the common law of torts recognizes a duty to disclose:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated . . . (e) [i] facts basic to the transaction, [ii] if he

knows that the other is about to enter into it under a mistake as to them, and [iii] that the other, because of the relationship between them, the customs of the trade or other objective circumstances would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2)(e) (Am. L. Inst. 1977).

Debtor essentially disputes the bankruptcy court's conclusions regarding the first and third elements. First, Debtor disputes the court's conclusion that the loss of Draft Bars' national bar pod operations was a "basic fact" requiring disclosure. The comments to the Restatement define a "basic fact" as follows:

A basic fact is a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with. Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence. These facts may be material, but they are not basic.

Restatement (Second) of Torts § 551 cmt. j.

As to this point, Debtor argues that the bankruptcy court mistakenly found that the loss of Draft Bars' national bar pod operations was a significant portion of the income received by Draft Bars. According to Debtor, his testimony contradicted this conclusion, and the bankruptcy court did not otherwise have evidence supporting this finding.

As noted above, the bankruptcy court enjoys substantial discretion in weighing evidence and making determinations as to credibility following a

trial. *Anderson*, 470 U.S. at 573. The bankruptcy court explicitly found that Debtor lacked credibility with respect to his testimony regarding Draft Bars' income from other business ventures. In addition, the bankruptcy court thoroughly supported its conclusion with the following evidence: (i) Draft Bars' profit and loss statements reflected that Draft Bars was "overwhelmingly dependent" on the operation of Anheuser-Busch's bar pods for its income; (ii) the same documents reflected that other revenue generated by Draft Bars was "minimal" and "insufficient to make the bi-weekly payments Draft Bars owed to Kapitus;" and (iii) Debtor himself had complained that Draft Bars' other business ventures, such as building bar pods, were never profitable. These findings amply support the conclusion that Draft Bars' operation of bar pods was crucial to its continued ability to pay Kapitus and that Kapitus would have regarded the information as "basic" to the transaction between Kapitus and Draft Bars.

Next, Debtor contends that he did not have a duty to disclose the omitted information because Kapitus did not expect disclosure of the information. The crux of Debtor's argument is that Kapitus could have independently acquired information regarding the relationship between Draft Bars and Anheuser-Busch and chose not to do so.

In support of this argument, Debtor references the following comment to § 551 of the Restatement:

> *k. Nondisclosure of basic facts.* The rule stated in Subsection (1) reflects the traditional ethics of bargaining between adversaries,

15

in the absence of any special reason for the application of a different rule. When the facts are patent, or when the plaintiff has equal opportunity for obtaining information that he may be expected to utilize if he cares to do so, or when the defendant has no reason to think that the plaintiff is acting under a misapprehension, there is no obligation to give aid to a bargaining antagonist by disclosing what the defendant has himself discovered. To a considerable extent, sanctioned by the customs and mores of the community, superior information and better business acumen are legitimate advantages, which lead to no liability. The defendant may reasonably expect the plaintiff to make his own investigation, draw his own conclusions and protect himself; and if the plaintiff is indolent, inexperienced or ignorant, or his judgment is bad, or he does not have access to adequate information, the defendant is under no obligation to make good his deficiencies.

Restatement (Second) of Torts § 551 cmt. k.

Debtor, however, ignores the very next comment in the Restatement, which provides:

The continuing development of modern business ethics has, however, limited to some extent this privilege to take advantage of ignorance. There are situations in which the defendant not only knows that his bargaining adversary is acting under a mistake basic to the transaction, but also knows that the adversary, by reason of the relation between them, the customs of the trade or other objective circumstances, is reasonably relying upon a disclosure of the unrevealed fact if it

exists. In this type of case good faith and fair dealing may require a disclosure.

Restatement (Second) of Torts § 551 cmt. *l*.

The latter portion of comment *l* essentially reiterates the third requirement in finding a duty to disclose under § 551(2)(e) of the Restatement, i.e., that "because of the relationship between them, the customs of the trade or other objective circumstances," a party would reasonably expect a disclosure of certain facts. This Panel has previously held that an agreement containing an obligation to disclose facts that would have a "material adverse effect" is one instance where a party would reasonably expect disclosure of certain facts. *Howard v. Ray Hodge & Assocs., L.L.C. (In re Howard)*, BAP No. CC-23-1072-GCS, 2024 WL 420248, at *6-7 (9th Cir. BAP Feb. 5, 2024). There, the Panel disagreed with the debtor's argument that he had no duty to disclose certain information because "the relevant information was publicly available." *Id.* at *7. Rather, because the debtor knew "the other party [was] about to enter into the transaction under a mistake and would reasonably expect disclosure[,]" the Panel held the debtor in that case had a duty to disclose the material information. *Id.*

As in *Howard*, Section 2.1 of the Factoring Agreement obligated Debtor to disclose any "material adverse changes" in the financial condition of Draft Bars. And, notwithstanding the availability of relevant information from other sources (which, unlike *Howard*, was not publicly

17

available in this case and would have had to be requested from Anheuser-Busch itself), Debtor was obligated to disclose the "basic fact" that Draft Bars no longer operated Anheuser-Busch's out-of-state bar pods.[6]

For all the reasons above, the court did not err in concluding that Debtor had a duty to disclose to Kapitus the loss of Draft Bars' national bar pod operations.

## C. The bankruptcy court did not err in finding that Debtor's omission was basic or material to Kapitus' decision to loan money.

"[S]ilence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under § 523(a)(2)(A)." *Loomas v. Evans (In re Evans)*, 181 B.R. 508, 514 (Bankr. S.D. Cal. 1995) (quoting *Minority Equity Cap. Corp. v. Weinstein*, 31 B.R. 804, 809 (Bankr. E.D.N.Y. 1983)). "[T]he plaintiff must establish that the debtor concealed facts and that the facts concealed were material.[7] Concealed facts

---

[6] In connection with his argument that it was not reasonable to believe that Kapitus required disclosure of additional facts, Debtor places great import on the difference between a loan and a purchase of receivables. However, Debtor has not articulated why the omission of Draft Bars' loss of bar pod operations would qualify as a basic fact in one type of transaction but not the other. In either transaction, the information would relate to Debtor's ability to make required payments to Kapitus.

[7] In their common usage, the terms "basic fact" and "material fact" may be used interchangeably. However, for purposes of the analysis under § 523(a)(2), both Ninth Circuit authority and the Restatement distinguish the concepts. As noted above, the Restatement provides that "important and persuasive inducements to enter into [a] transaction" may qualify as "material" facts, but if they do not go to the "essence" of a transaction, they are not "basic" facts. Restatement (Second) of Torts § 551 cmt. j. In addition, in *Apte*, the Ninth Circuit separated its analysis of "basic facts," which may trigger a duty to disclose, from its analysis of "material facts." *In re Apte*, 96 F.3d at 1323-24.

are material if 'a reasonable man would attach importance to the alleged omission in determining his course of action.'" *Id.* at 515 (quoting *Titan Grp., Inc. v. Faggen*, 513 F.2d 234, 239 (2d Cir. 1975)).

Debtor asserts that the loss of Draft Bars' national bar pod operations was not a material fact because, in his view, the evidence demonstrates that Kapitus did not regard the information as material. Whether or not the evidence may be construed in that light, Kapitus' subjective belief about the materiality of the information is not a relevant part of the materiality inquiry. Rather, the court must assess whether "a reasonable man" would find the fact important.

The record and the court's explicit findings thoroughly support the conclusion that a reasonable party would find the omission material. As discussed in detail above, the court made several findings regarding the significance of income from operating Anheuser-Busch's bar pods in the overall financial health of Draft Bars.

Debtor also contends that Kapitus failed to show that **Debtor** knew the omission was material. In support, Debtor references an out-of-circuit case which held that, even if a debtor had a duty to disclose a fact, "he was only required to disclose those matters he **knew** [plaintiffs] regarded as important in determining their course of action with respect to" the agreement at issue in that case. *In the Paint, LLC v. Archibald (In re Archibald)*, 482 B.R. 378, 394 (Bankr. D. Utah 2012). It is unclear from where the *Archibald* court derived the requirement of knowledge of materiality.

19

The court cites only a comment to § 551(1)(a) of the Restatement, which provides:

> **Unless he is under some one [*sic*] of the duties of disclosure stated in Subsection (2)**, one party to a business transaction is not liable to the other for harm caused by his failure to disclose to the other facts of which he knows the other is ignorant and which he further knows the other, if he knew of them, would regard as material in determining his course of action in the transaction in question. The interest in knowing those facts that are important in determining the advisability of a course of action in a financial or commercial matter is given less protection by the rule stated in this Subsection than is given to the interest in knowing facts that are important in determining the recipient's course of action in regard to matters that involve the security of the person, land or chattels of himself or a third person.

Restatement (Second) of Torts § 551 cmt. a (emphasis added).

First, the emphasized language from this comment excludes the comment from application to Subsection (2), which is the relevant subsection in this case. Second, the comment does not impose a requirement that a defendant in a fraudulent omission case must have knowledge of the materiality of an omission. To the contrary, the comment simply states that **even if** a defendant knows a fact is material, he is not required to disclose it unless he has a duty to do so. This comment appears mainly to reinforce the requirement that defendants must have a duty to disclose a fact before being held liable for omitting it; the comment does

20

not suggest that defendants who **do** have such a duty must also have knowledge of the materiality of their omitted facts.

Moreover, none of the binding authorities in this Circuit impose a requirement that defendants must have knowledge of the materiality of an omission to be liable under § 523(a)(2)(A). The materiality inquiry set forth by those authorities requires only a finding that an objective "reasonable person" would consider the fact important in making a decision. *See, e.g., Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972) (defining a material fact as one "a reasonable investor might have considered . . . important in the making of this decision"); *In re Apte*, 96 F.3d at 1323 (the materiality analysis required "objective proof, *i.e.*, whether a reasonable person might have considered the facts important to his or her decision") (quoting *Rainier Title Co. v. Demarest (In re Demarest)*, 176 B.R. 917, 922 (Bankr. W.D. Wash. 1995)). As discussed above, the court made several findings to support a conclusion that a reasonable person would have found the loss of Draft Bars' national bar pod operations material.

As the bankruptcy court correctly set forth, the relevant knowledge and intent in a § 523(a)(2)(A) claim are the debtor's knowledge of falsity or deceptiveness and an intent to deceive. As to these elements, the court made several findings, including that Debtor never substantiated his assertion that Draft Bars was receiving significant income from any other sources, the "sheer size of the discrepancy between" Debtor's view of Draft Bars' financial condition as compared to the financial documents in

21

evidence, and Debtor's desperate need for cash to continue operating Draft Bars. As a result, the court's conclusions regarding Debtor's knowledge and intent are well supported.[8]

## D. The bankruptcy court did not err in holding that an "omission" is not a "statement."

Finally, Debtor urges the Panel to overrule its prior holding in *Oregon v. Mcharo (In re Mcharo)*, 611 B.R. 657 (9th Cir. BAP 2020). According to Debtor, this Panel should hold that omissions also may be "statements" for purposes of § 523(a)(2)(A), such that any omissions regarding the financial condition of Draft Bars would be excluded from the purview of § 523(a)(2)(A).

In *Mcharo*, the bankruptcy court held that an omission regarding the debtor's financial condition could qualify as a "statement respecting the debtor's or an insider's financial condition" for purposes of § 523(a)(2)(A).

---

[8] In connection with his arguments regarding intent, and several times throughout the brief, Debtor asserts that other testimony or evidence exists that undermines the bankruptcy court's conclusions. However, as Debtor acknowledges in his brief, the standard of review regarding the court's findings of fact is clear error, such that this Panel will only reverse a court if the findings are "illogical, implausible, or without support in the record." *Hinkson*, 585 F.3d at 1261-62 & n.21. In addition, as noted above, the court is afforded "substantial discretion" in weighing evidence and making credibility determinations. *Anderson*, 470 U.S. at 573. Thus, although Debtor disputes many of the court's findings, he has not demonstrated why any of the court's findings are "illogical, implausible, or without support in the record."

*In re Mcharo*, 611 B.R. at 661. The Panel disagreed. *Id.* In holding that omissions do not qualify as "statements," the Panel reasoned:

> Congress did not define "statement" in the Bankruptcy Code. A fundamental canon of statutory construction is that, when a term is undefined, words within a statute "will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979). In interpreting an undefined term, courts may consult dictionary definitions. *Transwestern Pipeline Co., LLC v. 17.19 Acres of Prop. Located in Maricopa Cty.*, 627 F.3d 1268, 1270 (9th Cir. 2010). The Webster's definition – the act or process of stating, reciting, or presenting orally – does not contemplate silence or even nonverbal communication.

*Id.* at 661-62.

Even if the Panel agreed with Debtor's interpretation of the word "omission," the Panel is bound by our prior opinions unless: (i) there is a request for reconsideration of the prior opinion by the Panel sitting en banc; or (ii) subsequent legislation or decisions by the Ninth Circuit or Supreme Court undermine the prior opinion. *See* 9th Cir. BAP Rules 8019-2, 8024-1(c).

*Mcharo* has not been overruled or undermined by any intervening, binding authorities or applicable legislation.[9] Nor has there been a request

---

[9] In fact, as Debtor concedes in his brief, the Ninth Circuit Court of Appeals has held that an "omission" is not a "statement" for purposes of § 523(a)(2)(A), albeit in an unpublished disposition. *Howell v. Law Offs. of Andrew S Bisom (In re Howell)*, No. 21-60031, 2023 WL 5925886, at *1 (9th Cir. Sept. 12, 2023).

for reconsideration of *Mcharo* by the Panel sitting en banc. As such, we are bound by the holding in *Mcharo*.

In any event, even if we were not bound by the holding in *Mcharo*, we would reach the same conclusion reached in that case. Debtor's interpretation of the word "statement" as inclusive of "omissions" runs contrary to the plain meaning of both terms. Consequently, the bankruptcy court did not err in holding that Debtor's omission did not qualify as a statement under § 523(a)(2)(A).

## CONCLUSION

The bankruptcy court did not err in determining that the debt Debtor owes to Kapitus is nondischargeable under § 523(a)(2)(A). We therefore AFFIRM.